Jose Luis NEVAREZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 417–86.

Court of Criminal Appeals of Texas,
En Banc.

Feb. 1, 1989.

Michael J. Hutson, El Paso, for appellant.

Steve W. Simmons, Dist. Atty., and Robert Dinsmoor, Asst. Dist. Atty., El Paso, Robert Huttash, State's Atty., Austin, for the State.

OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

McCORMICK, Presiding Judge.

Appellant, Jose Luis Nevarez, was convicted by a jury of the offense of delivery of a controlled substance. The jury assessed punishment at thirty years' confinement. The El Paso Court of Appeals reversed the conviction in an unpublished opinion finding that the State failed to prove that appellant had "actually transfer[red]" a controlled substance as alleged in the indictment. (*Nevarez v. State*, No. 08–85–00062–CR, February 26, 1986, Tex. App.—El Paso.) The appellate court ordered that an acquittal be entered. We granted the State's petition for review to determine the correctness of the Court of Appeals' opinion. We reverse.

In pertinent part, the indictment in this case alleged:

"... that JOSE LOUIS NEVAREZ on or about the 23rd day of May, 1984 ... did then and there unlawfully, knowingly and intentionally delivered, to wit: did then and there actually transfer fifty pounds or less but more than five pounds of marihuana, to Jorge Pacheco...."

At trial, the State introduced evidence that appellant telephoned Mike Bogden, an El Paso police detective, and offered to sell the detective thirteen pounds of marihuana in exchange for $3,900. Appellant said that getting the marihuana would be "[n]o problem" and that a friend in Juarez, Mexico had it. Appellant indicated that it would take about four hours to get the marihuana into the State from Mexico and that he would get back to the officer when he had gotten it across the border. Later that afternoon appellant called the officer and the two arranged to meet in a particular K–Mart parking lot. The officer went to the K–Mart and waited for two hours. Appellant failed to show but that evening he again called the officer to tell him that he had the marihuana and wanted to make the deal that night. The police officer told

appellant that he was already in bed and to call back the next day.

Appellant again contacted the officer. They arranged to make the transfer at a shopping mall parking lot.

Officer Bogden, assisted by officer Jorge Pacheco, went to the shopping mall parking lot. The following testimony was elicited:

"Q. What occurred at [the shopping mall parking lot]?

"A. [By Officer Bogden] He backed the truck, again, as I stated, the back of the truck was toward our trunk and he moved it so that they were actually very close. At that time, they got out of the truck and we got out of our car and I, kind of, stood by the car talking to Mr. Nevarez and Detective Pacheco went to the rear of the truck and he was speaking with Mr. Arias and, maybe, the third subject, I believe, Mr. Calles.

"Q. What were you doing with Mr. Nevarez, at that time?

"A. Just talking, he was asking me if I had the money and, I said, 'Yes.' and, I said, 'Do you have the marihuana?' and, he said, 'Yes.' and I said 'I'll let you take a look at the money, but let us take a look at the marihuana.' and he said, 'Okay.' So he turned and indicated to Mr. Arias and Mr. Calles, like, okay, let's have them go ahead and look at it.

"Q. What happened at that time?

"A. At that time, Detective Pacheco, I could see him at the rear of the truck and *Mr. Arias—there was a green bag in the back of the truck, a garbage bag, slid the bag toward the back of the truck toward Detective Pacheco and said, 'Okay, here, go ahead and take a look at it.'*

"Q. *Arias touched the bag?*

"A. *Yes. He slid it over to Detective Pacheco.*

"Q. *What did Pacheco do, at that time?*

"A. *He pulled the bag over to take a look at it and while he was doing that, Arias then advised Mr. Nevarez to go count the money with me while*

*they were—Pacheco was looking at the marihuana.*

\* \* \* \* \* \*

"A. Well, as Detective Pacheco was looking at it, he nodded to me that it was, indeed, marihuana. While Nevarez was counting the money with me, in the car, I gave the bust signal to the back-up units to move in and execute the arrest.

"Q. Would you please explain to the Jury what a bust signal is?

"A. At the time that the delivery takes place, once we feel the delivery is taking place, we give a signal. In this case, I was wearing a cap and I took my baseball cap off and that was a signal to the other units in the area, that were watching, that the transfer had, indeed, occurred, the delivery had taken place and for them to move in and make the arrest." (Emphasis added).

The El Paso Court of Appeals found that the State failed to establish that an "actual transfer" of the contraband had taken place. That court relied upon the testimony of Officer Pacheco:

"Q. After the bust signal was given, what, exactly, happened?

"A. After the bust signal was given, Bogden walked over toward our car to show Nevarez the money and at this point, I tried to pick [sic] bag, but, Arias wouldn't let me, he was holding on to it until Nevarez had the money. So, at this point, I just backed up because I knew he wasn't going to give it to me until they had the money and I backed up so I could have both Arias and Calles in front of me, I didn't want them to get behind me."

The Court of Appeals cited *Daniels v. State*, 674 S.W.2d 388 (Tex.App.—Austin 1984) reversed, 754 S.W.2d 214 (Tex.Cr. App.1988), for the proposition that actual delivery contemplates a manual transfer of the property. Apparently, because appellant's co-defendant, Arias, had not allowed officer Pacheco to physically remove the marihuana, then, according to the Court of

Appeals, no transfer had occurred. The Court of Appeals opined that the State's evidence proved "an offer to sell" but not an "actual transfer." We disagree.

"Deliver" or "delivery" is defined by the Controlled Substances Act to mean "the actual or constructive transfer from one person to another of a controlled substance...." Article 4476–15, Section 1.02(7), V.A.C.S. (Supp.1988). For purposes of the Act, it also includes an offer to sell a controlled substance. Id. In *Ferguson v. State*, 622 S.W.2d 846 (Tex.Cr.App. 1980), this Court determined that an indictment, alleging delivery of a controlled substance, must define how the deliver occurred. Complying with *Ferguson*, the State in this case alleged that the delivery was an "actual transfer."

The term "actual transfer" is not defined for purposes of the Controlled Substances Act. When statutory terms or phrases are not defined by statute they are ordinarily given their plain meaning without regard to distinction between construction of penal laws and laws on other subjects, unless the act clearly shows that they were used in some other sense. *Campos v. State*, 623 S.W.2d 657, 658 (Tex.Cr.App.1981); V.T. C.A., Government Code, Section 312.002(a) (1988).

In *Conoway v. State*, 738 S.W.2d 692 (Tex.Cr.App.1987) (plurality opinion), we determined that "actual transfer" consists in "transferring the real possession and control of a controlled substance from one person to another person." 738 S.W.2d at 695 citing Webster's Ninth Collegiate Dictionary (1985 Edition). And in *Daniels v. State*, supra, this Court cited Ballantine's Law Dictionary to define "delivery" as "a handing over; the surrender of possession to another.... For some purposes, a delivery is accomplished by nothing more than making a thing available to another, *placing it within his reach*, notwithstanding there is no actual handing of the thing from one person to another." 754 S.W.2d at 220. (emphasis added).

In the charge to the jury, the trial court included instructions on the law of parties and incorporated this law into the application section of the charge. See V.T.C.A., Penal Code, Sections 7.01 and 7.02 (1974). Thus, in order to sustain allegations contained in the indictment, the State had to prove that appellant, acting with or without another, "actually transferred" the marihuana to Officer Pacheco. See *Westfall v. State*, 663 S.W.2d 664 (Tex.App.—Corpus Christi 1984, pet. ref'd).[1]

The record in this case indicates that appellant's co-defendant slid the bag containing marihuana over to Officer Pacheco. Officer Pacheco took the bag and tore it open. Pacheco had "real possession and control" of the marihuana at that time. *Conoway*, 738 S.W.2d at 695. See also *Queen v. State*, 662 S.W.2d 338 (Tex.Cr. App.1983). Regardless of whether appellant, his co-defendant or anyone else *subsequently* refused to allow the officers to remove the bag of marihuana is of no moment—the "actual transfer" of the marihuana occurred pursuant to the law of parties the instant that Pacheco physically took and inspected the marihuana offered him by appellant's co-defendant. That the officer in this case eventually backed away from the contraband for his own safety did not and could not vitiate the transfer which had already taken place. We do not require a prolonged possession or extensive

1. The standard for determining the sufficiency of the evidence on appeal is, viewing the evidence in the light most favorable to the verdict, whether any rationale trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Sutherlin v. State*, 682 S.W.2d 546 (Tex.Cr.App.1984). The issue on appeal is not whether the reviewing court believes the prosecution's evidence or believes that the defense evidence "outweighs" the State's evidence. See *Wicker v. State*, 667 S.W.2d 137, 143 (Tex.Cr.App.), cert. denied 469 U.S. 892, 105 S.Ct. 268, 83 L.Ed.2d 204 (1984). If there is "more than a mere modicum" of evidence which establishes guilt beyond a reasonable doubt, and if the trier of fact believing this evidence finds a defendant guilty of the charged offense, the reviewing court is not in the position to reverse the judgment on sufficiency of evidence grounds. See *Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Cr.App.1988) citing *Jackson v. Virginia*, 443 U.S. 307, 319–320, 99 S.Ct. 2781, 2789–2790, 61 L.Ed.2d 560, 573–574 (1979).

control on the part of the transferee to find that an actual transfer has occurred.

The Court of Appeals' opinion in this case is reversed and the cause is remanded to that court to determine appellant's remaining points of error.

MILLER, J., concurs in result.

CLINTON, Judge, dissenting.

My dissent on the merits is for the reasons stated in my concurring opinion in *Conaway v. State*, 738 S.W.2d 692 (Tex.Cr. App.1987), further noting that in purporting to present what the plurality in that cause determined to be a working definition of "actual *delivery*," the majority here omits the most significant qualifying determinant, to wit: "completely," as in "completely transferring," *Conaway*, at 695, and that in *Daniels v. State*, 754 S.W.2d 214, at 220, the Court was quoting a dictionary definition of *"delivery"* to determine sufficiency of notice in an allegation of *"constructive* transfer."

I also dissent to note 1 for its retrogressive treatment of the standard of review pronounced in *Jackson v. Virginia*; see my concurring opinion in *Moreno v. State*, 755 S.W.2d 866, at 870–872 (Tex.Cr.App. 1988). Furthermore, the Supreme Court spoke of "mere modicum" only to demonstrate that the *Thompson v. Louisville* doctrine "simply fails to supply a workable or even a predictable standard for determining whether the due process standard of *Winship* has been honored." *Jackson v. Virginia*, 443 U.S. at 320, 99 S.Ct., at 2790. That is not to say that "more than a mere modicum" of evidence will suffice. Indeed, to show its criterion was not novel, in note 12 the Supreme Court referred to *inter alia Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942) (verdict must be sustained where *"substantial* evidence" supports it).