Acero v. State 















IN THE
TENTH COURT OF APPEALS
 

No. 10-92-161-CR

     EDUARDO ROCHE ACERO,
                                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                                              Appellee
 

From the 263rd District Court
Harris County, Texas
Trial Court # 602,842
                                                                                                    

O P I N I O N
                                                                                                    

      Appellant was charged with the felony offense of delivery of a controlled substance, to-wit,
at least 400 grams of cocaine, including any adulterants or dilutants.
      Appellant pleaded not guilty to this offense. After trial, the jury found Appellant guilty and,
following a punishment hearing, assessed his punishment at 32 years in the Texas Department of
Criminal Justice, Institutional Division, plus a $25,000 fine.
      In the spring of 1991, Julio Molinero, a confidential informant with the Drug Enforcement
Administration, met Appellant at a particular restaurant. Appellant was introduced to Mr.
Molinero by Hugo Torres. At this meeting, Appellant told Mr. Molinero that he wanted to
purchase 30 kilograms of cocaine. Mr. Molinero told Appellant that he did not have the cocaine
at that particular time, but that he could have the cocaine later. A number of days later, Appellant
and Mr. Molinero met again to discuss Mr. Torres' involvement in the transaction. Appellant told
Mr. Molinero that he did not want Mr. Torres involved in the transaction because he did not want
to pay a commission to someone who was not really involved in the business.
      Appellant also told Mr. Molinero that he had some contact with several drug dealers, who
were in the city of Houston and who were from Colombia and Mexico. In the summer of 1991,
Appellant and Mr. Molinero met at another restaurant, and Appellant introduced Mr. Molinero
to the manager of the restaurant. At this meeting, the manager of the restaurant told Mr. Molinero
that he had a purchaser for 50 kilograms of cocaine. Mr. Molinero was subsequently introduced
by Appellant to another individual who was accompanied by armed men. This other individual
wanted to purchase 30 kilograms of cocaine.
      Appellant also introduced Mr. Molinero to Denise Alegria, who was to be involved in a sale
of cocaine. Appellant told Mr. Molinero that Ms. Alegria had several drug trafficking contacts. 
Ms. Alegria told Mr.Molinero that she had powerful contacts in the City of Houston that could
sell the 30 kilograms of cocaine. The price negotiated for the cocaine was $15,000 per kilogram.
      During this time, Mr. Molinero introduced Appellant to Officer John Sanchez of the Drug
Enforcement Administration, and Appellant discussed narcotics at this meeting. Appellant was
very confident that he could supply their needs. Officer Blanca Campos of the Drug Enforcement
Administration eventually asked Mr. Molinero to set up a meeting with Appellant at another
restaurant on July 2, 1991. Mr. Molinero had told Appellant that Officer Campos and Officer
Johnny R. Mareno of the Houston Police Department were narcotics buyers from Los Angeles.
      At this meeting at the particular restaurant in Houston on July 2, 1991, Appellant was told
that the officers were interested in purchasing 20 kilograms of cocaine, and Appellant said that he
had a person who could deliver this cocaine. The price that was negotiated for the 20 kilograms
of cocaine was $17,500 per kilogram. Appellant said that the reason the cocaine was so expensive
was because it was uncut and of good quality. Appellant said that the cocaine would be coming
uncut from Colombia. The time for the transaction was set for the following day, July 3, 1991. 
Before the transaction was to be conducted, Appellant would provide a smaller sample of the
cocaine.
      When Mr. Molinero discussed with Appellant the problem of bringing any illegal narcotics
to Houston, Appellant said that he had a relative in Colombia who worked for the government
there, who had contacts in Colombia to obtain the drugs, and who could obtain the necessary
passports and documentation for $35,000. Officer Campos also asked Appellant if he could supply
her with 50 kilograms of cocaine per month, and Appellant said that he could because he had
several sources of cocaine.
      On July 3, 1991, Mr. Molinero, along with Officers Campos and Mareno, met with Appellant
in the parking lot of another restaurant in Houston. Appellant had arrived in his vehicle. 
Appellant told Mr. Molinero and the officers that his source, Ms. Alegria, and her associates, a
man and a woman, were located in a nearby fast-food restaurant. Mr. Molinero told Appellant
that it was permissible for Ms. Alegria to supply the cocaine, but that the particular location was
not good for conducting that transaction. Therefore, they agreed to ultimately meet in the parking
lot of a nearby department store.
      Appellant subsequently drove to the fast-food restaurant and brought one of Ms. Alegria's
associates, Jacquelyn Trevino, to the restaurant's parking lot. Ms. Trevino expressed some
reservations about conducting the transaction in the department store's parking lot, and she stated
that she wanted to conduct the transaction at an apartment complex. Officer Campos told Ms.
Trevino that she needed to see the cocaine first before the location for the transaction was
changed. They decided to meet again shortly in the department store's parking lot.
      Appellant and Ms. Trevino left the restaurant's parking lot, and they drove to the nearby fast-food restaurant where Ms. Alegria and her other associate, John Gomez, were located. After they
met at this location, Appellant drove Ms. Trevino to a particular apartment complex in Houston. 
When Appellant and Ms. Trevino arrived at the apartment complex, they got out of Appellant's
vehicle and walked to a particular apartment in the complex. Two kilograms of cocaine were
obtained at this location. During this time, Mr. Gomez also arrived at the apartment complex in
his vehicle, and Ms. Alegria arrived at the apartment complex in her vehicle.
      Appellant and Ms. Trevino left the apartment shortly thereafter, and Ms. Trevino was
carrying a white plastic bag. Appellant and Ms. Trevino returned to the department store parking
lot, and they were followed by Mr. Gomez in his vehicle. Appellant knew that he was there to
sell two kilograms of cocaine to Officer Campos, and he actively participated in the transaction.
      Mr. Molinero and Officers Campos and Mareno subsequently met Appellant and Ms. Trevino
in the department store's parking lot. Appellant told Officer Campos that the cocaine was in his
vehicle. Appellant got out of his vehicle, and Officer Campos got into Appellant's vehicle. Ms.
Trevino brought out two kilograms of cocaine, and she picked up one of the kilograms of cocaine
and handed it to Officer Campos.
      Ms. Trevino told Officer Campos, "If you like these two, you can pay me for them and I'll
get the rest." After Officer Campos examined the cocaine, Ms. Trevino asked Officer Campos
if she liked the cocaine, and Officer Campos said that the cocaine was not very good. However,
Officer Campos said that, since they had been waiting for such a long time, she would take the
cocaine.
      Officer Campos told Ms. Trevino that she had enough money for the entire 20 kilograms of
cocaine and that she did not want to count out enough money for only two kilograms of cocaine. 
Officer Campos told Ms Trevino that it would be better if she obtained the other 18 kilograms of
cocaine, so that the entire transaction could be completed at one time. Ms. Trevino was reluctant
to conduct the transaction in that manner, but she eventually agreed to leave and bring back the
other 18 kilograms of cocaine.
      Officer Campos suggested that, instead of an apartment complex, they could conduct the
transaction at Appellant's residence. Ms. Trevino called Appellant back over to his vehicle and
discussed that possibility with Appellant. Appellant was not comfortable with conducting the
transaction at his residence, so they ultimately decided to conduct the transaction at Mr.
Molinero's apartment. Ms. Trevino asked Appellant to drive her over to Mr. Gomez who was
parked nearby. After they agreed to meet again in order to complete the transaction, Officer
Campos got out of Appellant's vehicle, and Appellant got back into his vehicle.
      Officer Abenicio Cordova, Jr. of the Drug Enforcement Administration made the decision to
have the suspects arrested at that time because he did not want to take the risk of losing the two
kilograms of cocaine. After taking Ms. Trevino to Mr. Gomez's vehicle, Appellant left in his
vehicle and Ms. Trevino left in Mr. Gomez's vehicle. The arrests were made at that time. A
subsequent analysis of the substances that Ms. Trevino showed to Officer Campos confirmed that
they were two bricks of cocaine--one brick of cocaine was 971.4 grams of 74.4 percent pure
cocaine, and the other brick of cocaine was 972.1 grams of 74.8 percent pure cocaine, for a total
of 1,943.5 grams of cocaine.
      Appellant comes to this court on six points of error. We have carefully considered all of
Appellant's points and contentions and overrule same. We affirm the trial court's judgment.
      By his first point of error, Appellant contends that the judgment of conviction must be
reversed and a judgment of acquittal ordered because the evidence is insufficient to show an
"actual" transfer of any amount of cocaine to Officer Campos, the only theory of delivery allowed
by the court's charge.
      In reviewing the sufficiency of the evidence, an appellate court should determine whether,
after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact
could have found the essential elements of the offense beyond a reasonable doubt. Jackson v.
Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Saxton v. State, (Tex. Crim.
App. 1991) 804 S.W.2d 910, 914.
      In analyzing the sufficiency of the evidence, an appellate court, faced with a record of
historical facts that supports conflicting inferences, must presume, even if it does not affirmatively
appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution,
and must defer to that resolution. Jackson v. Virginia, 443 U.S. at page 326; Matson v. State,
(Tex. Crim. App. 1991) 819 S.W.2d 839, 846. This court cannot apply the "reasonable
hypothesis" test to its review of the sufficiency of the evidence in this case. Geesa v. State, (Tex.
Crim. App. 1991) 820 S.W.2d 154.
      More specifically, Appellant argues that Ms. Trevino never relinquished possession of the
cocaine to Officer Campos, and that because the State failed to prove that Ms. Trevino ever
unequivocally relinquished control of the cocaine to Ms. Campos, there was no evidence to
support a conviction for actual transfer by Appellant either personally or under the law of parties. 
We do not agree. Officer Campos clearly testified that Ms. Trevino pulled out one of the two
kilograms of cocaine and handed it to Officer Campos.
      "Deliver" or "delivery" is defined by the Controlled Substances Act to mean "the actual or
constructive transfer from one person to another of a controlled substance." Tex. Rev. Civ.
Stat. Ann. art. 4476-15, § 1.02(7) (Vernon Supp. 1988); Nevarez v. State, (Tex. Crim. App.
1989) 767 S.W.2d 766, 768. When Ms. Trevino handed the kilogram of cocaine to Officer
Campos, the latter had real possession of the cocaine. The fact that Officer Campos may have
refused to maintain possession of the cocaine after handling and inspecting it did not vitiate the
transfer that had already taken place. There was no need for a prolonged possession or extensive
control of the cocaine on the part of Officer Campos in order for an actual transfer from Ms.
Trevino to Officer Campos to have occurred. In our opinion the transfer which occurred in the
case at bar falls well within the holding of our Court of Criminal Appeals in Nevarez and the cases
cited therein. We overrule Appellant's first point of error.
      Under his second point of error, Appellant contends: "The trial court erred in finding that
the State had a race-neutral reason for striking venireperson number four, Belle LaPlante, when
the State failed to give any reason for striking this prospective Hispanic juror." In essence,
Appellant claims that he established a case of purposeful-racial discrimination and that the trial
court should have granted his Batson motion because the prosecutor provided no racially-neutral
explanation for her peremptory challenge against prospective juror number four, but allegedly only
provided a racially neutral explanation for prospective juror number five, a Ms. Delgado. See
Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712, 90 L.Ed.2d 69 (1986).
      Under Batson, in order to establish a prima facie case of purposeful discrimination in a jury
selection, the defendant must first show that he is a member of a cognizable racial group, that the
prosecutor has exercised peremptory challenges to remove from the venire members of the
defendant's race and that the facts and any other relevant circumstances raise an inference that the
prosecutor used that practice to exclude the veniremen from the petit jury because of their race.
      In Tennard v. State, (Tex. Crim. App. 1990) 802 S.W.2d 678 at page 681, our Court of
Criminal Appeals outlines the procedural and evidentiary implications of Batson: the defendant
first must establish a prima facie case of purposeful discrimination in the prosecutor's exercise of
peremptory challenges; if such a prima facie case is established, then the burden of production
shifts to the State to bring forward a race-neutral explanation for exercising its peremptory strikes;
however, it remains the ultimate burden of the accused to persuade the trial judge by a
preponderance of the evidence that the allegations of purposeful discrimination are true; an
appellate court must view the entire record in a light most favorable to the trial judge's
determination; and reversal is required only if the trial judge's findings of fact are "clearly
erroneous" in light of the entire record. Also see Williams v. State, (Tex. Crim. App. 1991) 804
S.W.2d 95; Tex. Code Crim. Proc. art. 35.261(a).
      One of the reasons given by the prosecutor for exercising the peremptory challenge to Ms.
LaPlante was the fact that she (Ms. LaPlante) expressed an inability to assess a life sentence
against someone who delivered at least 400 grams of cocaine. The prosecutor specifically
questioned Ms. LaPlante about her inability to assess a life sentence against someone who sold at
least 400 grams of cocaine.
      The prospective juror's reluctance to give a life sentence was certainly enough to provide the
State with a racially-neutral reason for exercising a peremptory challenge. Moreover, Ms.
LaPlante testified that she had a friend who had been in prison four times—additionally, the State's
attorney pointed out that Ms. LaPlante appeared to have a better rapport with Appellant's trial
attorney than with herself. After the trial prosecutor presented her racially-neutral reasons for the
exercise of the peremptory challenge to Ms. LaPlante, Appellant's attorney made no responses
except to request an additional peremptory challenge.
      Applying the test in Batson, supra, and Tennard, supra, to the case at bar, we do not believe
Appellant established a prima facie case of purposeful discrimination against Hispanics; however,
assuming he did establish such a prima facie case, the State certainly rebutted it by racially-neutral
reasons. In short, Appellant has wholly failed to carry his burden under Batson and Tennard. 
Appellant's second point of error is overruled.
      Under his third point of error, Appellant claims: "The trial court erred in overruling
Appellant's objection to evidence of the nationality of his drug-dealer friends absent a showing by
the State that this evidence was relevant and admissible under Texas Rules of Criminal Evidence,
Rules 401 and 402." 
      Under his fourth point of error, Appellant contends: "The trial court abused its discretion in
failing to make a determination as to whether evidence of nationality of Appellant's drug-dealer
friends had a probative value which outweighed its prejudicial effect as required by Texas Rules
of Criminal Evidence, Rule 403."
      Mr. Molinero testified, over objection of relevancy, that Appellant told him that he
(Appellant) had some influential friends in this country that were drug dealers, and that their
nationalities were Colombian and Mexican.
      Mr. Molinero subsequently testified, without objection, that Appellant told him that he had
a relative in Colombia who worked for the government there, who had contacts to obtain the
drugs, and who could obtain necessary passports and documentation for $35,000.
      Inadmissible evidence can be rendered harmless if other evidence at trial is admitted without
objection and it proves the same fact that the inadmissible evidence sought to prove. Anderson
v. State, (Tex. Crim. App. 1986) 717 S.W.2d 622 and cases cited at page 628. Moreover, Officer
Campos testified that Appellant told her that the cocaine in this case was good quality, uncut
cocaine from Colombia. The cocaine that was delivered to Officer Campos was still in hard brick
form.
      We believe Mr. Molinero's testimony (concerning the nationality of the drug dealers with
whom he was dealing) was relevant to show that Appellant was in fact dealing with individuals
from Colombia in order to bring cocaine from Colombia to the United States. Also, Mr.
Molinero's testimony was especially relevant to show that Appellant was in fact involved in
delivering cocaine, and was not merely peripherally involved or entrapped into committing the
offense. In summary, we do not believe that any error is presented here; however, if there was
any error, this testimony did not contribute to the verdict or punishment in this case. Rule
81(b)(2), Texas Rules of Appellate Procedure. Accordingly, we overrule Appellant's third and
fourth points of error.
      By his fifth point of error, Appellant asserts: "The trial Court erred in overruling Appellant's
objection to evidence as to the amount of cocaine Denise Alegria wished to purchase absent a
showing that such evidence was relevant and admissible under Rules 401 and 402, Texas Rules
of Criminal Evidence." Under his sixth and final point of error, Appellant contends: "The trial
court erred in overruling Appellant's objection to evidence as to the price per kilo Denise Alegria
agreed to pay for each kilo of cocaine absent a showing that such evidence was relevant and
admissible under Rules 401 and 402, Texas Rules of Criminal Evidence."
      In connection with Mr. Molinero's first meeting with Appellant and Ms. Alegria, Mr.
Molinero testified, over objection of relevancy, that he (Mr. Molinero) was negotiating with
Appellant and Ms. Alegria to buy thirty kilograms of cocaine for a price of $15,000 per kilogram.
      Mr. Molinero also testified, without objection, that he was introduced by Appellant to two
other individuals who wanted to purchase 50 kilograms and 30 kilograms respectively. If this
evidence, which was admitted over Appellant's objection, should be inadmissible, here again it
has been rendered harmless because other evidence at trial was admitted without objection and it
proves essentially the same fact that the allegedly inadmissible evidence sought to prove. 
Anderson v. State, (Tex. Crim. App. 1986) 717 S.W.2d at page 628.
      However, be that as it may, we are of the opinion and hold that the evidence objected to was
relevant to show Appellant's involvement in the drug dealing that ultimately led up to the delivery
of the cocaine for which Appellant was charged in this case. Moreover, the evidence in question
was relevant to show Appellant's intent and knowledge. Strong v. State, (Tex. App.—Tyler 1990)
no pet., 805 S.W.2d 478 at pages 485 and 486; Howard v. State, (Tex. App.—Fort Worth 1986),
713 S.W.2d 414, 416, petition refused, (Tex. Crim. App. 1988), 789 S.W.2d 280. In any event,
if there be any error in the testimony in question, it is harmless under Rule 81(b)(2), Texas Rules
of Appellate Procedure. We accordingly overrule appellant's fifth and sixth points of error.
      Judgment of the trial court is affirmed.
 
 
                                                                                     JOHN A. JAMES, JR.
                                                                                     Justice (Retired)
Before Justice Cummings,
      Justice Vance, and
      Justice James (Retired)
Affirmed
Opinion delivered and filed April 14, 1993
Do not publish