TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-99-00591-CR







Johnny Rodriguez, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF COMAL COUNTY, 22ND JUDICIAL DISTRICT


NO. CR99-025, HONORABLE GARY L. STEEL, JUDGE PRESIDING







A jury found appellant Johnny Rodriguez guilty of delivering cocaine to a minor. 
See Tex. Health & Safety Code Ann. § 481.122 (West Supp. 2000). The jury assessed
punishment, enhanced by a previous felony conviction, at imprisonment for sixty years and a
$10,000 fine. We will modify the judgment of conviction to delete the affirmative finding that
Rodriguez used a deadly weapon in the commission of the offense and affirm the judgment as
modified.

Rodriguez's daughter, K.R., testified that on September 9, 1998, when she was
fourteen years old, she went to the house her father shared with his mother, K.R.'s grandmother. 
Rodriguez and K.R. went to his bedroom where Rodriguez produced a "twenty" of cocaine.(1) 
Rodriguez placed the cocaine on the top of a speaker, chopped it with a razor blade, and divided
it into lines. Then, using a rolled up dollar bill, K.R. inhaled the cocaine as Rodriguez watched.

Later that day, K.R. gave her mother, Linda Watts, four dollars to purchase
gasoline.(2) One of the bills was the one K.R. had used to inhale the cocaine. Watts noticed some
white powder on the bill. When she tasted it, it made her tongue numb. Suspecting the powder
was cocaine, Watts confronted K.R., who revealed what had happened. A urine specimen taken
from K.R. the next day tested positive for cocaine.


Sufficiency of Evidence


Rodriguez contends the evidence is legally insufficient to support the jury's finding
that he delivered cocaine to K.R. The question presented is whether, after viewing all the
evidence in the light most favorable to the verdict, any rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S.
307, 324 (1979); Griffin v. State, 614 S.W.2d 155, 158-59 (Tex. Crim. App. 1981). 

Rodriguez first argues that K.R. was an accomplice witness, and that her testimony
was not adequately corroborated. See Tex. Code Crim. Proc. Ann. art. 38.14 (West 1979)
(accomplice witness rule). Rodriguez relies on the opinion in Blake v. State, 971 S.W.2d 451,
461 (Tex. Crim. App. 1998), in which the juvenile exception to the accomplice witness rule was
abolished. 

The test for determining whether a witness is an accomplice under article 38.14 is
whether the witness could be prosecuted under the same indictment by which the accused was
charged. See Gamez v. State, 737 S.W.2d 315, 322 (Tex. Crim. App. 1987); Reyna v. State, 22
S.W.3d 655, 659 (Tex. App.--Austin 2000, no pet.). It is an affirmative defense to prosecution
for delivering a controlled substance to a minor that the actor was younger than eighteen years of
age. See Tex. Health & Safety Code Ann. § 481.122(b)(1) (West Supp. 2000). Thus, while there
is no longer a blanket exception to the accomplice witness rule for juveniles, K.R. could not be
successfully prosecuted for the offense for which Rodriguez was indicted and therefore was not
an accomplice witness.

Rodriguez further argues that the State failed to prove that he delivered the cocaine
to K.R. by actual transfer, as alleged in the indictment. See Tex. Health & Safety Code Ann.
§ 481.002(8) (West Supp. 2000) (delivery means actual or constructive transfer, or offer to sell). 
He refers us to the holding that "an actual transfer . . . contemplates the manual transfer of
property from the transferor to the transferee." Heberling v. State, 834 S.W.2d 350, 354 (Tex.
Crim. App. 1992). Rodriguez construes "manual transfer" to mean that the transferor must
physically hand the contraband to the transferee. In this case, the evidence shows that Rodriguez
placed the cocaine on a flat surface, from which K.R. inhaled it. Thus, argues Rodriguez, the
State did not prove an actual transfer.

Rodriguez misconstrues the meaning of "manual transfer," as the opinion in Nevarez
v. State, 767 S.W.2d 766 (Tex. Crim. App. 1989), demonstrates. In that case, the defendant's
co-party shoved a bag of marihuana from the front of a pickup truck bed to the rear, where it was
handled and examined by an undercover officer. See id. at 767. The court held that this evidence
was sufficient to prove an actual transfer of the marihuana. See id. at 768. The facts in the
present cause are analogous to Nevarez. Rodriguez manually placed the cocaine within K.R.'s
reach. She took possession of it by inhaling it, thereby completing the delivery. The evidence
is legally sufficient to prove delivery by actual transfer. Point of error three is overruled.

Rodriguez also contends the evidence is factually insufficient to prove delivery by
actual transfer. The evidence regarding the nature of the delivery was uncontradicted, and
Rodriguez's argument in support of this contention is merely a restatement of the argument
discussed in the two preceding paragraphs. A neutral review of all the evidence does not convince
us that the proof of guilt is so obviously weak or so greatly outweighed by contrary proof as to
undermine confidence in the jury's determination. See Johnson v. State, 23 S.W.3d 1, 11 (Tex.
Crim. App. 2000). Point of error four is overruled.


Extraneous Offenses


In his seventh point of error, Rodriguez contends the district court erroneously
admitted extraneous offense evidence. K.R. testified that Rodriguez first gave her cocaine in
January 1998, and that he subsequently gave her cocaine on twenty to thirty occasions between
January and September. One of K.R.'s classmates testified that she saw Rodriguez give K.R.
cocaine once during the summer of that year. Rodriguez urges that this testimony had no
relevance other than character conformity, that is, to prove his bad character in order to show
action in conformity therewith. See Montgomery v. State, 810 S.W.2d 372, 387 (Tex. Crim. App.
1991) (op. on reh'g); Tex. R. Evid. 404(b). He further argues that if these extraneous offenses
were relevant apart from character conformity, this relevance was substantially outweighed by the
danger of unfair prejudice. See Tex. R. Evid. 403.

An extraneous offense is an act of misconduct that is not shown in the charging
instrument. See Rankin v. State, 953 S.W.2d 740, 741 (Tex. Crim. App. 1996). The indictment
in this cause alleged that appellant delivered cocaine to K.R. "on or about" September 9, 1998. 
When the indictment alleges that a crime occurred on or about a particular date, the State may
present evidence of the offense being committed at any time prior to the filing of the indictment
and within the limitations period. See Sledge v. State, 953 S.W.2d 253, 256 (Tex. Crim. App.
1997). The testimony of which Rodriguez complains was not evidence of extraneous offenses, but
rather evidence of the repeated commission of the offense alleged in the indictment. Rodriguez
was entitled to require the State to elect the occurrence on which it sought to rely for conviction,
but in the absence of a request for an election there was no error in admitting the challenged
testimony. See Worley v. State, 870 S.W.2d 620, 622-23 (Tex. App.--Houston [1st Dist.] 1994,
pet. ref'd); see also Crawford v. State, 696 S.W.2d 903, 905-07 (Tex. Crim. App. 1985). Point
of error seven is overruled.


Enhancement of Punishment


In points of error five and six, Rodriguez contends the evidence is legally and
factually insufficient to support the jury's finding that he had been previously convicted of a
felony. See Tex. Penal Code Ann. § 12.42(b) (West Supp. 2000). The enhancement paragraph
alleged that appellant was convicted of attempted aggravated robbery on July 26, 1976, in the
Comal County district court, in cause number 7925. To prove this previous conviction, the State
introduced a penitentiary packet that was linked to Rodriguez by his fingerprints. The exhibit
contains a judgment reflecting that Rodriguez was convicted of the offense alleged, on the date
alleged, in the court alleged, but in cause number 7625. The exhibit also contains the
corresponding sentence, which bears cause number 7925. Rodriguez's challenge to the sufficiency
of the evidence is based on the discrepancy with respect to the cause number.

To be fatal, a variance between the pleading and the proof regarding a previous
conviction used to enhance punishment must be both material and prejudicial to the defendant. 
See Hall v. State, 619 S.W.2d 156, 157 (Tex. Crim. App. 1980); Plessinger v. State, 536 S.W.2d
380, 381 (Tex. Crim. App. 1976). Rodriguez does not allege or show that he was misled,
surprised, or unable to determine the previous conviction the State sought to prove. There is no
fatal variance in this cause. See Cole v. State, 611 S.W.2d 79, 82 (Tex. Crim. App. 1981) (cause
number 87954 alleged, cause number 87594 proved; no fatal variance); Straughter v. State, 801
S.W.2d 607, 611 (Tex. App.--Houston [1st Dist.] 1990, no pet.) (cause number 494,316 alleged,
cause number 474,316 proved; no fatal variance). Points of error five and six are overruled.


Deadly Weapon Finding


The State gave notice in the indictment that it would seek a finding that Rodriguez
"used a deadly weapon, to-wit: cocaine" during the commission of the alleged offense. See Tex.
Code Crim. Proc. Ann. art. 42.12, § 3g(a)(2) (West Supp. 2000).(3) The deadly weapon question
was submitted to the jury in a special issue, and the jury's affirmative finding is reflected in the
district court's judgment. In points of error one and two, Rodriguez contends the evidence is
legally and factually insufficient to sustain the finding that he used the cocaine as a deadly weapon
during the commission of this offense.

We are cited to no opinion discussing whether, in a prosecution for delivering a
controlled substance, it can be said that the substance was a deadly weapon used during the
commission of the offense within the meaning of article 42.12, section 3g(a)(2). The State
conceded at trial that it was "pushing the envelope" with respect to the deadly weapon finding, and
asked the jury to "make a decision that then will allow higher authorities to ultimately decide the
issue." To determine whether the deadly weapon finding was appropriate, we must answer two
questions: was the cocaine "used . . . during the commission of a felony offense" and was the
cocaine a deadly weapon.


Was the cocaine used by Rodriguez during the commission of a felony?

The only felony offense committed by Rodriguez was the delivery of cocaine to
K.R., a minor. Rodriguez argues that cocaine cannot be used to deliver itself. He urges that it
was necessary to show that the cocaine was used to facilitate the commission of an associated
felony distinct from the delivery.

All felonies are theoretically susceptible to an affirmative finding regarding the use
or exhibition of a deadly weapon. See Patterson v. State, 769 S.W.2d 938, 940 (Tex. Crim.
App. 1989). The phrase "'used . . . during the commission of a felony offense' refers certainly
to the wielding of a [weapon] with effect, but it extends as well to any employment of a deadly
weapon, even its simple possession, if such possession facilitates the associated felony." Id. at 941
(quoting Patterson v. State, 723 S.W.2d 308, 315 (Tex. App.--Austin 1987), aff'd, 769 S.W.2d
938 (Tex. Crim. App. 1989)). In Patterson, for example, the defendant's possession of a firearm
was found to facilitate his possession of methamphetamine, the offense for which he was
convicted. See id. at 942. 

Rodriguez relies on the opinions in Ex parte Petty, 833 S.W.2d 145 (Tex. Crim.
App. 1992), and Narron v. State, 835 S.W.2d 642, 644 (Tex. Crim. App. 1992). In Petty, the
defendant was convicted of unlawful possession of a firearm by a felon, and an affirmative finding
was made based solely on his unlawful possession of the handgun. See Petty, 833 S.W.2d at 145. 
The court wrote, "[I]n order to 'use' a deadly weapon for affirmative finding purposes, the weapon
must be utilized to achieve an intended result, namely, the commission of a felony offense separate
and distinct from 'mere' possession." Id. The affirmative finding was impermissible in that case
"because there was no associated felony facilitated by the Applicant's possession of the deadly
weapon." Id. at 145-46. In Narron, a prosecution for possession of a prohibited weapon, the
court followed Petty and deleted an affirmative finding based, as in Petty, solely on the possession
of the weapon for which he was convicted. See Narron, 835 S.W.2d at 644.

In Tyra v. State, 897 S.W.2d 796, 797 (Tex. Crim. App. 1995), the defendant was
convicted of involuntary manslaughter arising out of his operation of a motor vehicle while
intoxicated, and an affirmative finding was made that he used the vehicle as a deadly weapon
during the commission of the offense. Citing Petty and Narron, the defendant argued that the
affirmative finding was impermissible because his use of the vehicle was an essential element of
the offense for which he was convicted; he did not use the vehicle to facilitate a separate and
distinct associated felony. See id. at 798. The court rejected this argument, writing that Petty and
Narron mean only that "mere possession of the weapon without putting it to any use or purpose
whatsoever does not" constitute "use" of the weapon within the meaning of article 42.12, section
3g(a)(2). Id. Petty and Narron "do not stand for the proposition that the phrase 'used or exhibited
a deadly weapon during commission of a felony offense' necessarily means 'used or exhibited a
deadly weapon during commission of an offense which does not otherwise require the use or
exhibition of a deadly weapon.'" Id. The court added, "There is simply nothing in the phrase
'used a deadly weapon' to imply that it must always be used to commit an 'associated offense.'"
Id. The court held that the affirmative finding was proper even though involuntary manslaughter
always involved the use of a deadly weapon. See id.; see also Mann v. State, 13 S.W.3d 89, 91
(Tex. App.--Austin 2000, pet. granted) (upholding finding that defendant used automobile as
deadly weapon during commission of felony driving while intoxicated).

Rodriguez was not convicted of merely possessing cocaine. He "used" the cocaine
by delivering it in the same sense that the defendant in Tyra "used" his automobile during the
commission of the involuntary manslaughter. In light of Tyra, we must reject Rodriguez's
argument that the delivery of a controlled substance cannot, in itself, constitute the "use" of the
substance "during the commission of a felony offense" within the meaning of article 42.12, section
3g(a)(2). Whether the affirmative finding was appropriate in this cause therefore turns on whether
the cocaine was shown to be a deadly weapon.


Was the cocaine a deadly weapon?

Under the penal code, there are two kinds of deadly weapons. First, there are those
things that are deadly weapons by design: "a firearm or anything manifestly designed, made, or
adapted for the purpose of inflicting death or serious bodily injury." Tex. Penal Code Ann.
§ 1.07(a)(17)(A) (West 1994). Second, there are those things that become deadly weapons by use: 
"anything that in the manner of its use or intended use is capable of causing death or serious bodily
injury." Id. § 1.07(a)(17)(B). If a thing is shown to be a deadly weapon by design, it is not
necessary to prove in a particular case that it was really capable of causing death or serious bodily
injury in that case. See Thomas v. State, 821 S.W.2d 616, 620 (Tex. Crim. App. 1991). But if
the State seeks to prove that a thing became a deadly weapon by the manner of its use or intended
use, the evidence must establish that it was capable of causing death or serious bodily injury as
used by the defendant in that case. See Holder v. State, 837 S.W.2d 802, 807 (Tex. App.--Austin
1992, pet. ref'd). 

The State does not contend and made no effort to prove that the cocaine in question
was a deadly weapon by design. Instead, the State sought to prove that the cocaine was a deadly
weapon because it was capable of causing death or serious bodily injury in the manner of its use
or intended use. There is no evidence that Rodriguez's use of the cocaine differed from his
intended use, so we will examine the record to determine if there is evidence to support a finding
that the cocaine was used by Rodriguez in a manner capable of causing death or serious bodily
injury.

The only evidence pertinent to the deadly weapon issue was that of Dr. Charles
Smith, a family practice physician in New Braunfels. Dr. Smith testified that cocaine can have
"a wide variety of effects" ranging "from mild to profound systems [sic] such as a coma,
convulsions, even heart attack and death." According to the witness, the short-term effects of
cocaine use include increased heart rate, sweating, increased blood pressure, dilation of the pupils,
and sometimes cardiac arrhythmia. Long-term effects can include chronic damage to the heart
muscle. The doctor testified that "there's not been a minimum safe dose established for cocaine. 
So any dose could be a potential time bomb." Dr. Smith was of the opinion that "cocaine is a very
lethal substance" that "has the capability to cause a myriad of effects, either short term or long
term." In the doctor's opinion, "one may be lucky enough to survive several encounters with
cocaine, [but] he or she may not survive the next one. There is just no way to know." During
cross-examination, Dr. Smith confirmed that cocaine has some legitimate medicinal uses, and
acknowledged that it is possible that a single use of cocaine might not cause death or serious
injury. He also said that cocaine must be ingested in order to have any effect.(4) 

Dr. Smith's testimony does not support a finding that the cocaine in this cause was
capable of causing death or serious bodily injury in the manner of its use by Rodriguez. First,
Smith's testimony was irrelevant to Rodriguez's use of the cocaine. Rodriguez "used" the cocaine
during the offense by placing it on a flat surface, chopping it with a razor blade, and arranging it
into lines. Smith did not testify--and there is no other evidence--that this use of the cocaine was
capable of causing serious bodily injury or death. Indeed, Smith testified that cocaine must be
ingested to have a deleterious effect. There is no evidence that Rodriguez injected K.R. with
cocaine or forced her to ingest it.

It is helpful to distinguish Rodriguez's conduct from that of the defendant in Davis
v. State, 955 S.W.2d 340 (Tex. App.--Fort Worth 1997, pet. ref'd). The defendant in that case
was an oral surgeon who, it was shown, routinely administered excessive dosages of sedatives to
his patients by injection during surgical procedures. See id. at 342-46. On one such occasion,
the patient died. See id. The defendant was convicted of manslaughter and the jury found that
he used a deadly weapon, the sedatives, during the commission of the offense. See id. at 352. 
The court of appeals held that the evidence supported a finding that the defendant used the mixture
of drugs during the offense in a manner capable of causing death. See id.

Unlike the defendant in Davis, Rodriguez merely made the cocaine available to
K.R., albeit knowing that she would inhale the drug. The State would have this Court sustain the
deadly weapon finding because Rodriguez delivered a drug to K.R. that was used by K.R. in a
manner capable of causing death or serious bodily injury. The State, however, was obligated to
prove that Rodriguez used the cocaine in a manner capable of causing death or serious bodily
injury.(5) Dr. Smith's testimony does not speak to Rodriguez's use of the cocaine in this cause. 

Second, even if a finding that Rodriguez used a deadly weapon could be based on
K.R.'s use of the cocaine, Dr. Smith's testimony is insufficiently related to that use. Smith's
testimony broadly establishes that the recreational use of cocaine can result in physical reactions
ranging from "mild to profound," including death in some cases. But an alleged deadly weapon's
capability of causing serious bodily injury or death in the manner of its use must be evaluated in
light of the facts that actually existed when the felony was committed. See Williams v. State, 946
S.W.2d 432, 435 (Tex. App.--Fort Worth 1997), rev'd on other grounds, 970 S.W.2d 566 (Tex.
Crim. App. 1998). The record before us is silent in that regard. There is no evidence as to the
purity or potency of the cocaine Rodriguez delivered to K.R, or otherwise suggesting that this
cocaine was likely to cause a serious, rather than a mild, physical reaction in the user. There is
no evidence that the manner in which K.R. used the cocaine, inhaling it in its powder form, was
more likely to result in serious injury to the user than other forms of use, such as injecting it in
solution. There is no evidence that K.R. was especially susceptible to an adverse reaction from
cocaine use.

To support a finding that the cocaine was a deadly weapon in the manner of its use,
the State was required to demonstrate that the cocaine in this cause was capable of causing death
or serious bodily injury as it was used in this cause. See Holder, 837 S.W.2d at 802. Testimony
that there is an unknown possibility of a serious adverse physical effect arising out of the use of
some cocaine by some persons under some circumstances does not satisfy that burden.

We hold that the evidence is legally insufficient to support the finding that the
cocaine was a deadly weapon in the manner of its use by Rodriguez and sustain point of error one. 
We need not address the factual sufficiency challenge in point two.

The district court's judgment is modified to delete the affirmative finding that a
deadly weapon was used during the commission of the offense. See Williams, 970 S.W.2d at 566
(remedy when affirmative finding erroneously made). As modified, the judgment is affirmed.



 

 Bea Ann Smith, Justice

Before Chief Justice Aboussie, Justices Kidd and B. A. Smith

Modified and, as Modified, Affirmed

Filed: November 2, 2000

Publish

1. K.R. testified that a "twenty" was $20 worth of cocaine, or about enough to fill a thimble.
2. Rodriguez and Watts were divorced. Both lived in New Braunfels. K.R. lived with her
mother, but often visited her father.
3. Article 42.12, section 3g(a)(2) provides that an affirmative finding shall be made "when it
is shown that a deadly weapon as defined in Section 1.07, Penal Code, was used . . . during the
commission of a felony offense . . . and that the defendant used . . . the deadly weapon . . . ." 
4. The State also offered the testimony of Jorge Rodriguez, an agent with the Drug
Enforcement Administration. Agent Rodriguez described the process by which cocaine is
extracted from coca leaves in countries such as Bolivia and Columbia. He also testified that
cocaine sold on the street can be over ninety percent pure, but is often "cut" by the addition of
other substances. Agent Rodriguez had no information, however, regarding the cocaine delivered
to K.R. by appellant Rodriguez, and the State does not rely on his testimony on appeal. 
5. Article 42.12, section 3g(a)(2) permits an affirmative finding based on another person's use
of a deadly weapon only if the defendant is convicted as a party to the offense and knew that a
deadly weapon would be used. Rodriguez was not convicted as a party.

See id
. at 352. 
The court of appeals held that the evidence supported a finding that the defendant used the mixture
of drugs during the offense in a manner capable of causing death. See id.

Unlike the defendant in Davis, Rodriguez merely made the cocaine available to
K.R., albeit knowing that she would inhale the drug. The State would have this Court sustain the
deadly weapon finding because Rodriguez delivered a drug to K.R. that was used by K.R. in a
manner capable of causing death or serious bodily injury. The State, however, was obligated to
prove that Rodriguez used the cocaine in a manner capable of causing death or serious bodily
injury.(5) Dr. Smith's testimony does not speak to Rodriguez's use of the cocaine in this cause. 

Second, even if a finding that Rodriguez used a deadly weapon could be based on
K.R.'s use of the cocaine, Dr. Smith's testimony is insufficiently related to that use. Smith's
testimony broadly establishes that the recreational use of cocaine can result in physical reactions
ranging from "mild to profound," including death in some cases. But an alleged deadly weapon's
capability of causing serious bodily injury or death in the manner of its use must be evaluated in
light of the facts that actually existed when the felony was committed. See Williams v. State, 946
S.W.2d 432, 435 (Tex. App.--Fort Worth 1997), rev'd on other grounds, 970 S.W.2d 566 (Tex.
Crim. App. 1998). The record before us is silent in that regard. There is no evidence as to the
purity or potency of the cocaine Rodriguez delivered to K.R, or otherwise suggesting that this
cocaine was likely to cause a serious, rather than a mild, physical reaction in the user. There is
no evidence that the manner in which K.R. used the cocaine, inhaling it in its powder form, was
more likely to result in serious injury to the user than other forms of use, such as injecting it in
solution. There is no evidence that K.R. was especially susceptible to an adverse reaction from
cocaine use.

To support a finding that the cocaine was a deadly weapon in the manner of its use,
the State was required to demonstrate that the cocaine in this cause was capable of causing death
or serious bodily injury as it was used in this cause. See Holder, 837 S.W.2d at 802. Testimony
that there is an unknown possibility of a serious adverse physical effect arising out of the use of
some cocaine by some persons under some circumstances does not satisfy that burden.

We hold that the evidence is legally insufficient to support the finding that the
cocaine was a deadly weapon in the manner of its use by Rodriguez and sustain point of error one. 
We need not address the factual sufficiency challenge in point two.

The district court's judgment is modified to delete the affirmative finding that a
deadly weapon was used during the commission of the offense. See Williams, 970 S.W.2d at 566
(remedy when affirmative finding erroneously made). As modified, the judgment is affirmed.



 

 Bea Ann Smith, Justice

Befor