NO. 07-03-0238-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



MAY 18, 2005



______________________________




TIMOTHY SHANE LEOCHNER, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 108TH DISTRICT COURT OF POTTER COUNTY;



NO. 46,248-E; HONORABLE ABE LOPEZ, JUDGE



_______________________________



Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.



MEMORANDUM OPINION




 Following a plea of not guilty to forgery of a financial instrument, appellant Timothy
Shane Leochner was convicted by a jury and punishment was assessed at two years
confinement. Presenting two issues, appellant contends the trial court (1) abused its
discretion in excusing a juror after the charge was read and the jury began its deliberation
because no legal circumstance occurred to prevent continuance of the juror's duty as a
juror and (2) abused its discretion in excusing the juror where he, his trial counsel, and the
State did not agree on the record to such separation of the jury. We affirm. 

 After a juror's personal concern about his service on the jury was brought to the
attention of the court, the matter was discussed by the court and counsel in chambers. 
Before the charge was read to the jury, at a bench conference, appellant's counsel inquired
about the court's decision regarding the subject juror. After discussion, appellant's trial
counsel submitted a handwritten motion as follows:

 Defendant, Timothy Shane Leochner, requests the following: Excuse juror
Fisher from further duty prior to jury deliberations. To prevent tainting
remaining jurors, Defendant requests that the Court excuse juror Fisher, due
to his knowledge of Jerry Ward. 

 Juror Fisher requested the bailiff after the name Derek Wait was mentioned
and while Defendant's attorney was out of the Courtroom. 

 Juror Fisher stated that he was afraid that retaliation, in the form of theft,
would occur if he was forced to continue as a juror. This disruption occurred
following discussion of Derek Wait testifying.


Following receipt of this motion signed by appellant's counsel, the trial court excused juror 
Fisher. After the remaining twelve jurors heard the charge and argument, they returned a
verdict of guilty. 

 By his first issue, appellant contends the trial court abused its discretion in excusing
juror Fisher after the charge was read and the jury began its deliberation because no legal
circumstance occurred to prevent continuance of the juror's duty, and by his second issue,
he contends the trial court abused its discretion in excusing juror Fisher where he, his trial
counsel, and the State did not agree on the record to such separation. We disagree.

 Both appellant and the State recognize that abuse of discretion is the appropriate
standard of review. See Brooks v. State, 990 S.W.2d 278, 286 (Tex.Cr.App.), cert. denied,
528 U.S. 956, 120 S.Ct. 384,145 L.Ed.2d, S.W.2d 300 (1999). See also Guzman v. State,
955 S.W.2d 85, 89 (Tex.Cr.App. 1997).

 In Tucker v. State, 771 S.W.2d 523, 534 (Tex.Cr.App. 1988), cert. denied, 492 U.S.
912, 109 S.Ct. 3230, 106 L.Ed.2d 578 (1989), the Court held that where the trial court gave
the charge requested by the defendant, he could not complain of the charge on appeal. 
Similarly, we hold that where, as here, the trial court excused the juror pursuant to
appellant's written motion, any error was invited. See also McIntyre v. State, 172 Tex.
Crim. 510, 360 S.W.2d 875, 876 (1962), cert. denied, 371 U.S. 867, 83 S.Ct. 130, 9
L.Ed.2d 104 (1962), where the court observed:

 It would be a strange rule which would permit an accused to complain of the
excuse of a juror when he had already indicated that he did not want such
person to serve on his jury.


We conclude the trial court did not abuse its discretion by excusing juror Fisher.

 Moreover, as a prerequisite to presenting a complaint for appellate review, error must
be preserved as provided by Rule 33.1(a) of the Texas Rules of Appellate Procedure. 
Preservation of error is a systemic requirement that as a first level appellate court we
should review on our own motion. See Hughes v. State, 878 S.W.2d 142, 151 (Tex.Cr.App.
1992) (on reh'g), cert. denied, 511 U.S. 1152, 114 S.Ct. 2184, 128 L.Ed.2d 902 (1994);
Jones v. State, 942 S.W.2d 1, 2 (Tex.Cr.App. 1997). Here, appellant does not make
reference to the record where his complaints on appeal were presented to the trial court
as required by Rule 33.1(a). Even assuming that the written motion was not binding on
appellant, a question we do not decide, because he did not present his contentions to the
trial court, error, if any, was not preserved for review. Issues one and two are overruled. 


 Accordingly, the judgment of the trial court is affirmed.

 Per Curiam

Johnson, C.J., not participating.



2). Actual transfer
consists of transferring the real possession and control of a controlled substance from one
person to another person. Nevarez v. State, 767 S.W.2d 766, 768 (Tex.Cr.App. 1989) (en
banc). 

 The evidence established that Kelly introduced Coleman to appellant and that the
two met on a number of occasions prior to September 28, 1998. Coleman testified that on
the date of the offense, he and Kelly began their Monday at the sale barn at 6:30 a.m. and
Coleman asked where he could buy crank or methamphetamine. According to Coleman,
Kelly suggested a few names and places and they ended up parked near a residential
driveway. Coleman remained in the truck and Kelly walked to the front porch to speak with
a man named "Cash." Just then, appellant pulled up in a car and approached Coleman
and asked what he needed. Appellant explained that he did not have crank, but did have
"powder" and walked inside the house and returned with some "dope" which Coleman
bought for $220. A chemist with the Texas Department of Public Safety testified that he
examined the substance and determined it to be cocaine weighing 2.98 grams. We
conclude the evidence is legally sufficient to establish delivery by actual transfer from
appellant to Coleman of cocaine of one or more but less than four grams. 

 Concluding that the evidence is legally sufficient to support the verdict, we must
now determine, after a neutral review of all the evidence, whether it is factually sufficient
to support the verdict. Johnson, 23 S.W.3d at 11. It is the exclusive province of the fact
finder to determine the credibility of the witnesses and the weight to be given their
testimony. Johnson v. State, 571 S.W.2d 170, 173 (Tex.Cr.App. 1978); Armstrong v.
State, 958 S.W.2d 278, 284 (Tex.App.--Amarillo 1997, pet. ref'd).

 The defense's trial strategy was to discredit Coleman by establishing that he was
untruthful and that by his testimony, he could not have made a buy from appellant at the
time referenced in his report. According to his report, Coleman purchased cocaine from
appellant on September 28, 1998, at 10:35 a.m. Coleman testified that after he would
make a drug buy in Tulia, it was his routine to return to Amarillo as soon as possible and
weigh and test the substance, complete an evidence tag, place the evidence in a
temporary narcotics vault, and generate a written report. Mike Amos, Commander of the
Panhandle Regional Narcotics Task Force also testified that policy after a drug buy was
to generate a report, conduct a field test, and book the narcotics into evidence on the date
of the buy, if possible. Coleman confirmed that after a secretary typed his report of
appellant's drug sale, he reviewed it and then signed it.

 After a hearing outside the jury's presence, the trial court permitted the defense to
question Coleman regarding a separate drug transaction that also took place on the
morning of September 28, 1998. According to Coleman's report of the other drug
transaction, he made a purchase in Tulia from Willie B. Hall at 9:31 a.m. and paid over
task force money at 9:40 a.m. Utilizing Coleman's protocol as testified to by him, the
defense attempted to establish that given the 45-minute drive from Tulia to Amarillo, it
would have been physically impossible for Coleman to make a purchase from appellant
at 10:35 a.m. in Tulia if Coleman was in Amarillo following up on the buy from Hall. 

 The State argues that although Coleman explained his usual procedure after a drug
purchase was to return to Amarillo, there is no evidence to show that Coleman returned
to Amarillo after his purchase with Willie B. Hall. Relying on Franklin v. State, 928 S.W.2d
707, 708 (Tex.App.-Houston [14th Dist.] 1996, no pet.), the State further asserts that any
conflict in Coleman's testimony goes to his credibility which is to be determined by the fact
finder and not to be intruded upon by an appellate court. 

 Elijah Kelly entered into a plea bargain to testify against appellant. He testified that
on September 28, 1998, he observed appellant hand "something" over to Coleman, but
that he did not see appellant deliver "dope" to him. The State attempted to discredit Kelly
by his prior testimony from another trial that resulted from Coleman's undercover
operation. Conducting a neutral review of all the record evidence under Johnson, 23
S.W.3d at 11, and without substituting our own judgment, we conclude that the evidence
is factually sufficient to support the verdict. Issues one through four are overruled.

 By issues five through eight, appellant challenges the sufficiency of the evidence
to support the enhancement of punishment where the State failed to prove the elements
of a playground and that the crime occurred within 1,000 feet of a playground. (1) We
disagree. The enhancement paragraph of the indictment recites

 [a]nd it is further presented in and to said Court that the defendant
committed the above offense within 1,000 feet of a playground, to-wit: the
Conner Park in Tulia, Texas . . . .


 Appellant specifically asserts that the State failed to produce evidence to show that
Conner Park is a playground. A playground is defined as "any outdoor facility . . . that is
(A) intended for recreation; (B) is open to the public; and (C) contains three or more
separate apparatus intended for the recreation of children, such as slides, swings, and
teeterboards." Tex. Health & Safety Code Ann. § 481.134(a)(3) (Vernon Supp. 2002). 
Further, in a prosecution under section 481.134, a map showing the location and
boundaries of drug-free zones is admissible in evidence and is prima facie proof of the
location or boundaries of those areas if the governing body adopts a resolution or
ordinance approving the map. See § 481.135. When Officer Jim Mull testified, the State
introduced Exhibit 4, a resolution for Tulia approving a drug-free zone map. The resolution
contains a map showing the location of Conner Park. During his testimony, Mull circled
the location of Conner Park on the map and marked the location of the drug transaction
with an "X." According to his testimony, he measured the distance between the driveway
where the transaction occurred and the park to be approximately 192 feet. 

 Mull testified that he observed at least three apparatus for the recreation of children
at Conner Park. We have searched but found no case law interpreting "apparatus" as
used in section 481.134(a)(3)(C). In addition to slides and swings, Mull also observed that
the park provided a basketball court, sandbox, and a pavilion. Appellant suggests that we
limit the term "apparatus" to include only those items specifically mentioned in the statute,
i.e., slides, swing sets, and teeterboards. We agree with the State that the Legislature did
not intend to limit playground apparatus to only slides, swing sets, and teeterboards, and
that the phrase "such as" could be interpreted as meaning "including but not limited to" the
apparatus mentioned in section 481.134(a)(3)(C). We conclude the evidence is sufficient
to establish the enhancement paragraph of the indictment that appellant delivered a
controlled substance within 1,000 feet of a playground. Issues five through eight are
overruled.

 Don H. Reavis

 Justice

Do not publish.
1. We measure the sufficiency of the evidence by the elements of the crime as
defined by the hypothetically correct jury charge. Malik v. State, 953 S.W.2d 234, 240
(Tex.Cr.App. 1997).