**Nancy Ann LOGAN, Appellant,**

v.

· **The STATE of Texas, Appellee.**

No. 06–00–00183–CR.

Court of Appeals of Texas, Texarkana.

April 24, 2001.

Opinion Overruling Rehearing May 3, 2001.

jurisdictional amount of greater than or equal to $20,000.00, but less than $100,000.00. It assessed her punishment at seven years' confinement, but recommended she be placed on community supervision. The trial court suspended the imposition of Logan's punishment and placed her on seven years' community supervision.

Logan challenges the legal and factual sufficiency of the evidence. In reviewing the legal sufficiency of the evidence, we look to see whether after viewing all of the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); *Lane v. State*, 933 S.W.2d 504, 507 (Tex.Crim.App.1996). We must evaluate all of the evidence in the record, both direct and circumstantial, whether admissible or inadmissible. *Johnson v. State*, 871 S.W.2d 183, 186 (Tex.Crim.App.1993).

Under a factual sufficiency analysis, we examine whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *Johnson v. State*, 23 S.W.3d 1, 9 (Tex.Crim.App.2000); *see also Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim. App.1996). Accordingly, we reverse the fact finder's determination only to arrest the occurrence of a manifest injustice. *Johnson*, 23 S.W.3d at 12. Otherwise, we must give due deference to the fact finder's determinations concerning the weight and credibility of the evidence. *Id.* at 9.

As alleged in the indictment, the State had to prove (1) that Logan caused to be

Clifton L. "Scrappy" Holmes, Holmes Law Office, PC, John W. Moore, Longview, for appellant.

Charles C. Bailey, Titus/Camp County Dist. Atty., Mount Pleasant, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

ROSS, Justice.

Nancy Logan appeals her conviction for insurance fraud. She was alleged to have prepared and submitted a false statement of property lost or damaged in a house fire for purposes of recovery under her homeowner's insurance policy. The value of the claim was alleged to be $200,000.00 or more; however, the jury was also charged on lesser included offenses corresponding to lower jurisdictional amounts, i.e., (1) greater than or equal to $100,000.00, but less than $200,000.00; (2) greater than or equal to $20,000.00, but less than $100,000.00; (3) greater than or equal to $1,500.00, but less than $20,000.00; and (4) greater than or equal to $500.00, but less than $1,500.00.

The jury convicted Logan of the lesser included offense corresponding with the

prepared, or that she presented, a statement to an insurer in support of a claim for payment under a property and casualty insurance policy; (2) that the statement contained false or misleading information; (3) that she knew the statement contained false or misleading information; (4) that she caused it to be prepared, or presented it, with intent to defraud or deceive the insurer; (5) that the information pertained to a matter material to the claim, in that it concerned whether property was damaged or lost in the manner and under the circumstances described in a statement related to a claim for insurance payment; (6) that the matter affected her right to a payment or the amount of a payment; and (7) that the value of the claim was greater than $200,000.00. *See* Tex.Pen.Code Ann. § 35.02 (Vernon Supp.2001). A statement is an oral or written communication or a record or documented representation of fact evidencing a loss, injury, or expense. Tex.Pen.Code Ann. § 35.01(5) (Vernon Supp.2001).

The evidence showed that Logan took out a homeowner's insurance policy from State Farm Insurance five days before her house fire. She filed a sworn statement in proof of loss, in which she claimed the cause of her loss was the house fire. The statement also contains three columns, one for actual cash value, one for replacement cost value, and one for amount claimed. She claimed a loss of $180,000.00 for the house. Regarding personal property, the column for replacement cost value is listed at $108,000.00, while the columns for actual cash value and amount claimed were left blank.

State Farm's claims adjuster, Kim Olson, admitted that the statement in proof of loss does not constitute a claim for personal property, but asserted that the personal property inventory forms filed in support of Logan's claim do constitute a claim for personal property. Olson testified that State Farm uses those forms in evaluating a claim and determining whether to pay on the claim and the amount to be paid.

Olson testified that she gave Logan blank inventory forms, explained to her the purpose of the forms, and told her to sign each form when she completed it. Above the signature line on each form is a statement that reads, "The above information is true to the best of my knowledge." She testified that Logan sent the inventory forms to her three times. The forms were unsigned the first two times, and Olson sent them back to Logan with instructions for her to sign them. The third time, they were returned signed "Nancy Logan."

Lance Hall, an investigator for the Texas State Fire Marshall's Office, testified that in his opinion, the fire at Logan's house was the result of arson. He testified that his investigation further revealed that Logan's credit union had begun foreclosure proceedings on her house. He stated that he interviewed witnesses who said that Logan boxed and moved items of personal property out of her house in the days before the fire.

Hall testified that pursuant to a search warrant, he seized items of personal property from Logan's rental house, where she lived after the fire. The items included family photographs and photograph albums, several videotaped movies, a letter and framed picture from President Ronald Reagan's inauguration, some *Gone With the Wind* figurines, and a family Bible. During his testimony, Hall compared the items seized to items listed on the inventory forms submitted in support of Logan's claim. He testified that witnesses who had been in Logan's house before the fire and in her rental house after the fire identified items of her personal property in her

rental house as things that had also been in the house that burned.

Logan contends the evidence is insufficient to prove (1) that she intended to defraud or deceive, (2) that she caused a statement to be prepared or that she presented a statement, (3) that the property the State presented at trial is the same as the property on the inventory forms, (4) that the allegedly false information is material, (5) that the information affected her right to a payment or the amount of a payment, and (6) that the value of the property was sufficient to correspond to the jurisdictional amount of the offense. We analyze each of these contentions below.

### Intent to Defraud or Deceive

■ Logan contends the evidence does not show she intended to defraud or deceive because the evidence shows that she sent the inventory forms in three times. The first two times she sent in the forms, the company sent them back with instructions for completing them. However, a rational jury could have inferred that Logan failed to sign the documents in an effort to avoid affirming that the information contained therein was true to the best of her knowledge. This inference is supported by testimony that Logan's credit union had begun foreclosure proceedings on her house, that the fire was deliberately set, and that property seized from her rental home was similar to property described on the inventory forms she submitted to the insurance company.

### Caused a Statement to be Prepared or Presented

■ Logan contends the State failed to prove that the inventory forms were the same forms she presented and that they were signed by her. She contends the forms were clearly filled out by at least three different people, each with different handwriting. However, Olson testified that the inventory forms, State's Exhibit 3, were the forms Logan submitted to her for personal property items damaged or lost in the fire. Even if the inventory forms were filled out in part by others, each form was signed "Nancy Logan."

■ To the extent Logan challenges the authenticity of the inventory forms based on a purported lack of proof that the signatures on those forms were hers, she has waived that contention by failing to object on that basis in the trial court. TEX. R.APP.P. 33.1(a). The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. TEX.R.EVID. 901(a). Authentication of handwriting may be established by a comparison performed either by experts or by the jury. TEX.CODE CRIM.PROC.ANN. art. 38.27 (Vernon 1979); *Zimmerman v. State*, 860 S.W.2d 89, 97 (Tex.Crim.App.), *vacated & remanded on other grounds, Zimmerman v. Texas*, 510 U.S. 938, 114 S.Ct. 374, 126 L.Ed.2d 324 (1993). Even if Logan had objected, the authenticity of the forms could have been established by the jury's comparison of the signatures on the inventory forms with other exhibits containing Logan's signature which were also admitted into evidence without challenge to their authenticity.[1] TEX.R. EVID. 901(b)(3); *Ex parte Watson*, 606 S.W.2d 902, 905 (Tex.Crim. App.1980) (orig.proceeding); *Strong v. State*, 805 S.W.2d 478, 486 (Tex.App.— Tyler 1990, pet. ref'd).

---

1. Two such exhibits are Logan's application for insurance, admitted into evidence as State's Exhibit 1, and her "Sworn Statement in Proof of Loss," admitted as State's Exhibit 2.

### False or Misleading Information

■ Logan contends the State failed to prove the property it seized was the same as the property in her house before the fire. The jury was entitled to infer, based on circumstantial evidence, that the items of property were the same. The State presented evidence of several videotaped movies seized from Logan's rental home with the same titles as movies listed on the inventory forms she submitted to State Farm. The State presented evidence that Logan had a framed letter and picture from President Reagan's inauguration in the house that burned, that a similar item was seized from her rental home, and that a similarly described item was listed on the inventory forms. Other items of property seized from Logan's rental home corresponded with property described on the inventory forms. In addition, there was evidence that the fire was deliberately set, and that Logan and her family packed and moved items of their personal property days before the fire.

### Material to the Claim

■ Logan contends the State failed to show that the allegedly false or misleading information in the inventory forms concerned "a matter that is material to a claim." Information concerning a matter that is material to a claim includes whether property was damaged or lost in the manner and under the circumstances described in a statement related to a claim for insurance payment. TEX. PEN.CODE ANN. § 35.02(c)(8).

Logan submitted a statement in proof of loss, in which she alleged the cause of her loss was a house fire. She then submitted inventory forms documenting property purportedly lost or damaged in that fire. The State presented evidence showing that property seized from her rental home was similar to property described on the inven-

tory forms. From this, the jury could have rationally concluded that the statements she filed with State Farm were material, in that they concerned whether her property was lost or damaged in the house fire.

### Right to a Payment or the Amount of a Payment

■ Logan contends the State failed to prove that the allegedly false or misleading information she provided concerned a matter affecting her right to a payment or the amount of a payment. However, Olson testified that if Logan submitted inventory forms listing property as lost or damaged that was not actually lost or damaged, State Farm would not pay on the claim for that property.

### Value of the Property

■ Logan contends the State failed to prove the value of the items alleged to have been wrongfully claimed. The State contends the jury was authorized to convict Logan if it found that she made a false or misleading statement that affected either (1) her right to a payment, or (2) the amount of a payment. Therefore, the State contends, whether it actually proved the value of the items wrongfully claimed is immaterial because the jury could have concluded, based on the evidence, that Logan's false or misleading statements affected her right to a payment.

We agree with the State, insofar as we conclude that the jury could have decided that Logan's false or misleading statements affected her right to a payment. Olson testified that State Farm would not pay for items claimed that were not lost or damaged. The evidence showed that Logan submitted inventory forms that claimed property lost or damaged which the jury could have rationally concluded was the same as property seized from Logan's rental home after the fire.

However, the value of the property may be necessary to establish the value of the claim, which in turn affects the punishment range for the offense. As mentioned previously, the State alleged the value of the claim exceeded $200,000.00; the jury found the value of the claim was between $20,000.00 and $100,000.00. Logan contends the word "claim" relates specifically to the false or misleading information in the statement, i.e., the specific property falsely claimed to have been lost or damaged. The State contends the value of the claim refers to the total amount claimed under the insurance policy.

This is apparently an issue of first impression. TEX. PEN.CODE ANN. § 35.02(a) provides as follows:

A person commits an offense if, with intent to defraud or deceive an insurer, the person causes to be prepared or presents to an insurer in support of a claim for payment under a health or property and casualty insurance policy a statement that the person knows contains false or misleading information concerning a matter that is material to the claim, and the matter affects a person's right to a payment or the amount of payment to which a person is entitled.

Information is material if, among other things, it concerns whether property was damaged or lost in the manner and under the circumstances described in a statement related to a claim for insurance payment. TEX.PEN.CODE ANN. § 35.02(c)(8). The Texas Penal Code does not define the term "claim," nor could we glean a definition from the Texas Insurance Code.

When construing a statute, we interpret it in accordance with the plain meaning of its language, unless the language is ambiguous or the plain meaning leads to absurd results that the Legislature could not possibly have intended.

*Boykin v. State,* 818 S.W.2d 782, 785 (Tex. Crim.App.1991). In conducting this plain meaning inquiry, "[w]e generally presume that every word in a statute has been used for a purpose and that each word, phrase, clause, and sentence should be given effect if reasonably possible." *Rocha v. State,* 16 S.W.3d 1, 14 (Tex.Crim.App.2000).

The State's construction of Section 35.02(d) is problematic because it leads to absurd results. For example, a person filing a claim of loss for $200,000.00, some of which is for property that was actually lost and some of which is for property fraudulently claimed to have been lost, would be punished for a first degree felony, even though the fraudulent portion of the claim might only be $20.00.

Section 35.02 was passed in 1995. The bill analysis for HB1487 indicates that the intent of the law was to reenact a law that was passed in 1993 (TEX. PEN.CODE ANN. § 32.55), but that did not get incorporated into the revised Penal Code. HOUSE COMM. ON CRIMINAL JURISPRUDENCE, BILL ANALYSIS, Tex. H.B. 1487, 74th Leg., R.S. (1995). The law is targeted at insurance fraud rings and was intended to make illegal "the knowing participation of filing a false claim for insurance proceeds, which was a more comprehensive method for police and prosecutors to use in processing cases than employing Theft or other existing Fraud statutes." *Id.* The bill analysis further states, "Under the older statutes, a cooperating victimized insurance company might be required to disburse proceeds to the criminals in order to prove a completed theft. This action did not guarantee prosecution of all those involved." *Id.* However, the bill analysis provides little guidance to resolve whether the Legislature intended "claim" to mean the overall amount claimed or the amount fraudulently claimed.

Other states have also passed laws to target fraud on insurers. Four states punish the act itself, regardless of the value of the property or claim. DEL.CODE ANN. tit. 11, § 913(a) (2000); D.C.CODE ANN. §§ 22–3825.2—22–3825.4 (2000); OKLA. STAT. tit. 21, § 1662 (2000); 18 PA. CONS.STAT. § 4117(D) (2000). Two states punish the offense according to theft/larceny laws, which tie the offense level to the value of the property or service taken. CONN. GEN. STAT. §§ 53–442, 53–443, 53a–122—53a–125b (1999); TENN.CODE ANN. § 39–14–133 (2000) & § 39–14–105 (2001). Six states punish the offense according to the fraudulent portion of the claim. FLA. STAT. ch. 817.234(11) (2000) (value of any property involved); MINN.STAT. § 609.611(3) (2000) (value of property wrongfully obtained); NEB.REV.STAT. § 28–631(2) (2000) (amount involved); N.H.REV.STAT. ANN. § 638:20(IV) (2000) (value of the fraudulent portion of the claim); N.Y. PENAL LAW §§ 176.05—176.35 (Consol.2001) (value of property taken); OHIO REV.CODE ANN. § 2913.47(C) (Anderson 2000) (amount of the claim that is false or deceptive).

Two states have statutes with language similar to the language of the Texas statute at issue in this case. Utah measures the degree of the offense by "the total value of all property, money, or other things obtained or sought to be obtained by the fraudulent insurance act or acts...." UTAH CODE ANN. § 76–6–521(4) (2000). Whether the term "total value of all property ... obtained ... by the fraudulent insurance act ...." would refer only to property fraudulently claimed or to the total amount claimed is an open issue under Utah law, as no court has addressed the question.

Wisconsin measures the degree of the offense by the "value of the claim or benefit." WIS. STAT. § 943.395(2) (2001). The offense is a Class A misdemeanor if the value of the claim is less than or equal to $1,000.00; it is a Class E felony if the value of the claim exceeds $1,000.00. *Id.*

One Wisconsin court has held that the "value of the claim" refers to the amount of the entire claim and not the fraudulent portion. *State v. Briggs,* 214 Wis.2d 281, 571 N.W.2d 881, 885 (Ct.App.1997). In *Briggs,* the defendant submitted a claim for $128,100.00 after a house fire, and the State presented evidence that a number of items listed on the proof of loss supporting the claim were false in some respect. *Id.* The defendant contended that the statute could be understood to mean that the fraudulent portion of the claim must be shown to be in excess of $1,000.00 before he could be punished for a Class E felony. *Id.* at 884. To construe the statute otherwise, he argued, would lead to an absurd result, namely including a false claim for a small amount within a legitimate claim for a large amount. *Id.*

The Wisconsin Court of Appeals held that the statute was clear on its face. The court concluded that the statute prohibited preparing a proof of loss in support of a claim, and then being punished according to the value of the claim. *Id.* The court held that the Legislature is the appropriate body to reconsider the statute's wisdom. *Id.* at 885.

The statute at issue in *Briggs* is different from the statute at issue here. In Wisconsin, Class A misdemeanors are punishable by a fine up to $10,000.00, confinement for up to nine months, or both. WIS. STAT. § 939.51(3)(a) (2000). A Class E felony is punishable by a fine of up to $10,000.00, imprisonment for up to five years, or both. WIS.STAT. § 939.50(3)(e) (2000). In contrast, the scheme established under the Texas Penal Code provides for seven levels of punishment, with each level of punishment increasing as the value of the claim increases. The least

severe offense under this scheme is for a claim of less than $20.00, which is a Class C misdemeanor punishable by a fine of up to $500.00. Tex.Pen.Code Ann. § 35.02(d)(1); Tex.Pen.Code Ann. § 12.23 (Vernon 1994). The most severe offense is for a claim of greater than or equal to $200,000.00, which is a first degree felony punishable by imprisonment for life or for any term of not more than ninety-nine years or less than five years, and in addition, by a possible fine of up to $10,000.00. Tex.Pen.Code Ann. § 35.02(d)(7)(A); Tex. Pen.Code Ann. § 12.32 (Vernon 1994). Thus, in Wisconsin, the potential punishments are not so different as to make the potential results egregious or absurd; in Texas such is not the case.

It is likely that in most insurance fraud cases, the value of the property fraudulently claimed to have been lost will approximate the amount claimed under the insurance policy. In *Obigbo v. State*, 6 S.W.3d 299, 306–08 (Tex.App.—Dallas 1999, no pet.), for example, the defendant claimed a loss of over $10,000.00 when two bags of expensive clothing were allegedly taken from his rental car. However, the State presented sufficient circumstantial evidence showing that the defendant had fabricated the loss. *Id.* Thus, construing "claim" to mean the amount fraudulently claimed will not affect the offense levels in most insurance fraud cases. But in those cases, such as the present case, in which the value of the property shown to have been fraudulently claimed is much lower than the amount claimed under the insurance policy, the resulting punishment does not reflect the scope of the fraud. We hold that the word "claim" in Section 35.02 means the amount fraudulently claimed.

We now must determine whether there was sufficient evidence presented to support the jury's verdict that Logan was guilty of a third degree felony.[2] The State presented certain items (State's Exhibits 6 through 10–A and 10–E through 10–O) seized from Logan's rental home. Hall pointed out where similar property was entered on the inventory forms Logan submitted showing the alleged value of the property lost in the fire. According to the inventory forms, the value of these items totaled $266.00. Thus, a rational jury could have concluded beyond a reasonable doubt that the value of Logan's claim for Exhibits 6 through 10–A and 10–E through 10–O was $266.00.

However, several other items the State introduced into evidence require further discussion. Exhibits 10–B, 10–C, and 23— respectively, videotapes of the movies *Mary Poppins* and *The Wizard of Oz*, and a photograph of Nancy Logan with Governor George W. Bush-were also seized from Logan's rental home. The State presented no testimony regarding the claimed value of those items or showing where those items were listed on the inventory forms Logan submitted. Our own review shows no entry on those forms. Therefore, there is no evidence that Logan submitted a claim for Exhibits 10–B, 10–C, or 23.

In addition, the record indicates that Exhibits 30 and 31 were two plates that Hall testified were part of the *Gone With The Wind* collection, which was entered into evidence as Exhibit 11. The State did not attempt to establish an independent value for the plates entered as Exhibits 30 and 31, and the plates are not separately listed on the inventory forms. Thus, the evidence warrants only the conclusion that the value of those plates was subsumed in the value of the *Gone With The Wind* collection, which was listed as $600.00. The jury could have rationally concluded beyond a reasonable doubt that the value

---

**2.** For this discussion, please refer to the table attached to the opinion.

of Logan's claim for Exhibits 11, 30, and 31 totaled $600.00.

Hall also testified that Exhibit 12 was a collector's *Cinderella* series containing a movie. He testified that Exhibit 12 was listed on page eleven of the inventory forms, the third item from the top. That item is listed as a *Cinderella* video valued at $20.00. No other reference to a *Cinderella* collector's series was made in the testimony or on the inventory forms. Thus, a rational jury could conclude beyond a reasonable doubt that the value of Logan's claim for Exhibit 12 was $20.00.

Hall further testified that Exhibits 13 A and 13 B were two quilts seized from Logan's rental home. He did not testify as to where those items were listed on the inventory forms, but did state that Logan listed eight quilts somewhere on the inventory forms.[3] He also testified that he found four quilts in the rental home, but only seized two. There is an entry on the inventory forms for eight quilts valued at a total of $3,500.00. Nevertheless, the State did not otherwise establish the claimed value of the two quilts it seized. Therefore, a rational jury could not determine the value of Logan's claim for Exhibits 13 A and 13 B beyond a reasonable doubt.

Hall testified extensively regarding Exhibits 14 through 22 and 24 through 28. Hall testified that Exhibit 14 was a collection of photograph albums. He did not testify as to where those items were listed on the inventory forms. However, there is an entry on the inventory forms for twenty photograph albums valued at $240.00. There are no other entries for photograph albums listed on the inventory forms. On cross-examination, Hall testified that he only seized nine of the twenty albums. The State did not otherwise establish the

claimed value of the nine albums seized. Therefore, a rational jury could not determine the value of Logan's claim for the nine photograph albums beyond a reasonable doubt.

Hall's testimony regarding Exhibits 15 through 22 and 24 through 28 is less clear. The State first asked him whether he seized "several photo items," to which he responded that he had. The State then examined him about Exhibit 14, the photograph albums. In rapid succession, the State next introduced Exhibits 15 through 22, but did not address on the record the identity of those items. Nevertheless, the reporter's record lists Exhibits 15 through 22 as "Family Photograph." The State also introduced Exhibits 24 through 28, characterizing each as "a collection of photographs." Hall testified that he seized "the family photos" in the back master bedroom and in a bathroom closet, and that he seized framed photographs in the living room, the back master bedroom, and in the hallway.

Hall never testified where Exhibits 15 through 22 and 24 through 28 were listed on the inventory forms. Further, the inventory forms contain several entries for pictures. For example, there is listed a "picture of Michael," three "framed baby pictures," a "picture & frame [of] my kids," a single "Picture," an "Old Picture," a "Picture with Name," 100 "Copies of Pictures," and 100 "Frames." Nowhere did Hall testify concerning which photographs seized from Logan's rental home corresponded to the entries on the inventory forms. Thus, a rational jury could not determine the value of Logan's claim for Exhibits 15 through 22 and 24 through 28 beyond a reasonable doubt.

---

**3.** There is also an entry on the inventory forms for two quilt tops, but the context of Hall's testimony makes clear that he was referring to the eight quilts listed on the inventory forms.

### Conclusion

The evidence is legally sufficient to convict Logan of insurance fraud. A rational jury could conclude beyond a reasonable doubt that Logan caused the inventory forms to be prepared, or that she presented them to State Farm; that the forms contained false information, in that Logan claimed losses for property that was not lost; and that this false information affected Logan's right to a payment or the amount of a payment.

We also conclude the evidence is factually sufficient. It is true the jury drew inferences based on circumstantial evidence. However, these inferences were reasonable given the evidence. The jury's verdict in the present case does not require that we act to arrest the occurrence of a manifest injustice. *Johnson*, 23 S.W.3d at 12.

We further conclude, however, that the evidence was legally insufficient to convict Logan of a third degree felony and that the trial court committed error at the punishment stage of the trial in authorizing a conviction for that level of offense. The evidence was legally sufficient, however, to convict Logan of a Class A misdemeanor. A careful comparison of the property entered into evidence and the purported value of the corresponding property listed on the inventory forms demonstrates that the State presented evidence from which a rational jury could find beyond a reasonable doubt that the value of the property Logan fraudulently claimed was $886.00.

■ A court of appeals may reform a judgment of conviction to reflect a conviction of a lesser included offense if (1) the court concludes that the evidence is insufficient to support conviction of the charged offense, but sufficient to support conviction of the lesser included offense, and (2) either the jury was instructed on the lesser included offense or one of the parties asked for but was denied such an instruction. *Collier v. State*, 999 S.W.2d 779, 782 (Tex.Crim.App.1999). The record shows that the jury was instructed to convict Logan if it found that the value of the claim was greater than or equal to $500.00, but less than $1,500.00. Therefore, we modify the judgment to show that Logan was convicted of a Class A misdemeanor. Tex.R.App. P. 43.2(b). We remand this case to the trial court for a new punishment hearing in accordance with the modified judgment. Tex.Code Crim. Proc. Ann. art. 44.29(b) (Vernon Supp.2001).

The judgment of guilt, as modified, is affirmed, and the cause is remanded for a new trial on punishment.

| Exhibit # | Description | Value | Reporters Record Citation | Inventory Form Citation |
|---|---|---|---|---|
| 6 | Autographed Letter–Framed | $ 50.00 | (R.R. vol. 3 at 83) | R.R. vol. 6, Exhibit # 3, p. 3 of 50 |
| 7 or 8 | Framed Inaugural | $ 20.00 | (R.R. vol. 3 at 83) (R.R. vol. 3 at 127) | R.R. vol. 6, Exhibit # 3, p. 3 of 50 |
| 9 | Family Bible | $ 50.00 | (R.R. vol. 3 at 84) | R.R. vol. 6, Exhibit # 3, p. 6 of 50 |
| 10–A | Movie-"Sandlot" | $ 15.00 | (R.R. vol. 3 at 85–86) | R.R. vol. 6 at Exhibit # 3, p. 10 of 50 |
| 10–B | Movie-"Mary Poppins" | | (R.R. vol. 3 at 86) | The testimony did not refer to the inventory forms and did not state a value, and no similarly titled item is listed on the inventory forms. |
| 10–C | Movie-"Wizard of Oz" | | (R.R. vol. 3 at 86) | The testimony did not refer to the inventory forms and did not state a value, and no similarly |

| | | | | titled item is listed on the inventory forms. |
|---|---|---|---|---|
| 10–E | Movie-"Top Gun" | $ 10.00 | (R.R. vol. 3 at 86) | R.R. vol. 6, Exhibit # 3, p. 8 of 50 |
| 10–F | Movie-"Oklahoma" | $ 10.00 | (R.R. vol. 3 at 86) | R.R. vol. 6, Exhibit # 3, p. 10 of 50 |
| 10–G | Movie-"Walt Disney's Jungle Book" | $ 20.00 | (R.R. vol. 3 at 87) | R.R. vol. 6, Exhibit # 3, p. 10 of 50 |
| 10–H | Movie-"The Sons of Katie Elder" | $ 7.00 | (R.R. vol. 3 at 160) | R.R. vol. 6, Exhibit # 3, p. 8 of 50 |
| 10–I | Movie-"The Cowboys" | $ 12.00 | (R.R. vol. 3 at 160) | R.R. vol. 6, Exhibit # 3, p. 8 of 50 |
| 10–J | Movie-"Wyatt Earp" | $ 18.00 | (R.R. vol. 3 at 160) | R.R. vol. 6, Exhibit # 3, p. 9 of 50 |
| 10–K | Movie-"Shane" | $ 7.00 | (R.R. vol. 3 at 160) | R.R. vol. 6, Exhibit # 3, p. 9 of 50 |
| 10–L | Movie-"Seven Brides for Seven Brothers" | $ 10.00 | (R.R. vol. 3 at 160) | R.R. vol. 6, Exhibit # 3, p. 9 of 50 |
| 10–M | Movie-"Gun Fight at the O.K. Corral" | $ 7.00 | (R.R. vol. 3 at 160 61) | R.R. vol. 6, Exhibit # 3, p. 9 of 50 |
| 10–N | Movie-"Who Shot Liberty" | $ 10.00 | (R.R. vol. 3 at 161) | R.R. vol. 6, Exhibit # 3, p. 8 of 50 |
| 10–O | Movie-"Lion King" | $ 20.00 | (R.R. vol. 3 at 161) | R.R. vol. 6, Exhibit # 3, p. 10 of 50 |
| 11 | Gone With The Wind Collection | $600.00 | (R.R. vol. 3 at 88) | R.R. vol. 6, Exhibit # 3, p. 16 of 50 |
| 12 | Movie-"Cinderella" | $ 20.00 | (R.R. vol. 3 at 88–89) | R.R. vol. 6, Exhibit # 3, p. 11 of 50 |
| 13–A & 13–B | Two Quilts | | (R.R. vol. 3 at 92–93, 142) | The testimony did not refer to the inventory forms, but the inventory forms contain an entry at p. 23 of 50 showing eight quilts valued at $3,500.00. However, the testimony did not establish an independent value for each quilt. |
| 14 | Photo Albums | | (R.R. vol. 3 at 89–92, 93–94, 101, 142–44) | The testimony did not refer to the inventory forms, but the inventory forms contain an entry for 20 photo albums at p. 29 of 50 valued at $240.00. However, the testimony did not establish an independent value for each photo album. |
| 15–22, 24–28 | Family Photos | | (R.R. vol. 3 at 89–92, 93–94, 101, 142–44) | The testimony did not refer to the inventory forms, and the inventory forms contain entries for numerous pictures. The testimony did not establish a relationship between the photos seized and entries made on the inventory forms. |
| 23 | Photo–Nancy Logan with Governor Bush | | (R.R. vol. 3 at 91) | The testimony did not refer to the inventory forms and did not state a value, and no similarly titled item is listed on the inventory forms. |
| 30–31 | Gone With The Wind Collection Plates | | (R.R. vol. 3 at 166, 168) | The testimony referred to this item as a part of Exhibit 11. The testimony did not otherwise refer to a separate entry for these items on the inventory forms and did not state a value, and no similarly titled item is listed on the inventory forms. |
| | Total | $886.00 | | |

## OPINION ON REHEARING

The State has filed a motion for rehearing in which it contends that a fraudulent claim for damaged of lost personal property could be proved entirely by circumstantial evidence. The State contends that if the jury was convinced beyond a reasonable doubt that Logan was guilty of insurance fraud, it could not find her guilty unless the State actually found the items claimed to have been damaged or lost.

 We agree that the State could prove by circumstantial evidence that the defendant is guilty of insurance fraud. In fact, much of the proof in the present case involved circumstantial evidence. The state showed that the Logan family moved items of personal property from the home before it burned, that their lender had begun foreclosure proceedings, that the fire was caused by arson, and that Logan acted deceptively in preparing the inventory forms.

We also agree that the State could establish the offense level involved by proving, using circumstantial evidence, that property claimed to have been damaged or lost was not actually damaged or lost. For example, if the State had produced testimony concerning specific property the Logans moved from their home before it burned and showed that they claimed the property was damaged or lost in the fire, the jury could have inferred that Logan had submitted a fraudulent claim for that property. We therefore disagree that the State must find the property in order to successfully prosecute an insurance fraud offense.

In the present case, the State did not establish, by circumstantial evidence or otherwise, that Logan was guilty of any more than a Class A misdemeanor.

The motion for rehearing is overruled.