Michael SIMS, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–01–236–CR.

Court of Appeals of Texas, Waco.

July 3, 2002.

Lawrence E. Johnson, Waco, for appellant.

Patrick C. Batchelor, Navarro County Dist. Atty., Christy D. Brown, Navarro County Asst. Crim. Dist. Atty., Corsicana, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

BILL VANCE, Justice.

After a bench trial, the court found Michael Anthony Sims guilty of constructive transfer of four or more but less than 200 grams of cocaine, a first-degree felony. TEX. HEALTH & SAFETY CODE ANN. § 481.112(d) (Vernon Supp.2002). The court sentenced him to twenty years in prison. *Id.* §§ 481.102, 481.112 (Vernon Supp.2002).

On appeal, Sims complains that (1) the evidence is legally insufficient to convict him, and (2) he received ineffective assistance of trial counsel who failed to move for a judgment of acquittal[1] and instead called Sims to testify, which was damaging to his defense. We will affirm the judgment.

*Facts*

Mike Turner, an undercover law enforcement agent, testified that he made arrangements through Reginald Melton to buy rocks of crack cocaine from Melton's supplier, Sims. The three met at a prearranged site, Sims in his vehicle and Turner and Melton in Turner's vehicle. When Turner asked Sims "where it was at," Sims pointed to a foil-wrapped package lying in the road near a tree and said "it's right there in that piece of foil." Turner exited his vehicle, retrieved the package, and returned to his vehicle; the cocaine was in the package. Sims and Turner "haggled" over the price, and Turner complained that the amount of drugs was less than agreed.

---

1. We assume Sims means a motion for a directed verdict.

Turner said Sims responded "that there was 24 there, told me to count them." Then Turner exited his vehicle and tried to hand Sims $480; but Sims refused and had Turner give the money to Melton, who pitched it from his vehicle to Sims sitting in his vehicle. Some of the money scattered, landing on the hood of Sims's car and on the ground. Turner testified that as he and Melton drove away, he saw Sims exit his vehicle and retrieve the scattered money.

Sims testified that for a fee he had agreed to pick up $480 for a person named "D" from Fort Worth. D told him by telephone that a package would be located near a tree, and he was to relay that information in exchange for the money. Sims was supposed to meet Melton at the site of the exchange; he did not know Turner was going to be there. Other than that, he did not know there was to be a cocaine sale, and he did not place the package containing the cocaine in the road. He testified he did not tell Turner there were 24 rocks in the package, and he denied knowing what was in the package.

### Constructive Delivery: Legal Sufficiency of the Evidence

In reviewing a legal sufficiency challenge, we view all the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Lane v. State*, 933 S.W.2d 504, 507 (Tex.Crim.App. 1996) (citing due process standard from *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). We consider all the evidence, both direct and circumstantial, including evidence improperly admitted. *Logan v. State*, 48 S.W.3d 296, 299 (Tex.App.-Texarkana 2001, no pet.)

(citing *Johnson v. State*, 871 S.W.2d 183, 186 (Tex.Crim.App.1993)).

Sims complains that the evidence proved an actual transfer, not a constructive transfer for which he was indicted. Delivery of a controlled substance can occur by actual transfer, constructive transfer, or offer to sell. *Thomas v. State*, 832 S.W.2d 47, 50–51 (Tex.Crim.App.1992); *Ferguson v. State*, 622 S.W.2d 846, 849 (Tex.Crim.App.1981). Upon timely motion to quash by the defendant,[2] the State must allege in the indictment which of these three types of delivery, or combinations thereof, it will rely on at trial; otherwise, the defendant's constitutional rights to notice of the charges against him and to protection from double jeopardy could be compromised. *Ferguson*, 622 S.W.2d at 849–51. When the State, without motion by the defendant, alleges in the indictment one or more of these types of delivery, the State is restricted at trial to those types. *Conaway v. State*, 738 S.W.2d 692, 694 (Tex.Crim.App.1987). Here, the indictment alleged only constructive transfer.

The Court of Criminal Appeals discussed constructive transfer in *Queen v. State*, 662 S.W.2d 338 (Tex.Crim.App. 1983). The Court said that, provided the State proves that prior to delivery the illegal substance was directly or indirectly under the defendant's control,[3] constructive transfer is shown if, *inter alia*, (1) the defendant entrusts the illegal substance to a third party for delivery to the buyer, *e.g.*, an associate or the postal service, or (2) the defendant places the illegal substance in a particular location and then advises the buyer of the location so that the buyer can retrieve the substance. *Id.* at 340. Under *Queen's* second definition, *i.e.*, placing the substance in a particular location,

---

2. Tex.Code Crim. Proc. Ann. art. 1.14 (Vernon Supp.2002).

3. Citing *Rasmussen v. State,* 608 S.W.2d 205, 210 (Tex.Crim.App.1980).

*etc.*, the evidence here supports a finding that Sims made a constructive transfer.

But Sims cites *Warren v. State*, 15 S.W.3d 168 (Tex.App.-Texarkana 2000, no pet.), and *Stolz v. State*, 962 S.W.2d 81 (Tex.App.-Houston [1st Dist.] 1997, pet. ref'd). *Warren* holds that "*Queen's* [second] definition is no longer effective" after *Nevarez v. State*, 767 S.W.2d 766 (Tex. Crim.App.1989). *Warren*, 15 S.W.3d at 171. *Stolz* holds that *Queen's* second definition is dictum, and that subsequent dictum in *Daniels v. State*, 754 S.W.2d 214, 221 (Tex.Crim.App.1988), "has neutralized its impact." *Stolz*, 962 S.W.3d at 82–83.

In *Warren*, the defendant, citing *Queen*, argued that the evidence did not prove actual delivery as alleged in the indictment, but rather only constructive delivery. *Id.* at 169. Testimony was that the defendant placed cocaine on the toilet in a motel-room bathroom and told the buyer where it could be retrieved. *Id.* The Texarkana court, holding that *Nevarez* makes *Queen's* second definition no longer effective, found an actual transfer. *Id.* at 171.

But in *Nevarez*, before any money was exchanged, the defendant allowed a buyer to open a garbage bag—located in the back of a pickup at which buyers and sellers were standing—to confirm that the bag contained marijuana; then officers were called in to arrest the defendant. *Nevarez*, 767 S.W.2d at 767. The Court of Criminal Appeals held that this was an actual transfer, not merely an offer to sell, even though the defendant had not allowed the buyer to physically remove the bag of marijuana from the pickup. *Id.* The buyer had "real possession" when the defendant "slid the bag containing the marijuana over" to him. *Id.* at 768. We find that the facts and holding in *Nevarez*—an offer-to-sell case—are distinguishable and do not make *Queen's* second definition "no longer effective."

In *Stolz*, by prior arrangement, the buyer left $20 under a rock, then walked twenty feet away and waited. 962 S.W.2d at 82. The seller then approached and exchanged marijuana for the $20. *Id.* Several minutes after the seller left, the buyer retrieved the marijuana. *Id.* The Houston court found this was an actual transfer, as alleged in the indictment, because it said the second definition in *Queen* is dictum. *Id.* at 83. It based that conclusion on dictum in *Daniels*, which it said (a) conflicted with the dictum in *Queen*, and (b):

> further expanded the definition of "constructive transfer" as follows: [A constructive transfer] only requires that when the State alleges constructive transfer to an alleged ultimate recipient, that the accused must have contemplated that his initial transfer would not be the final transaction in the chain of distribution. . . . *Queen* envisioned only one transfer between the seller and the buyer. . . . *Daniels* requires the seller to contemplate subsequent transfers in order to effectuate a "constructive transfer" to an "ultimate recipient."

*Id.* (quoting *Daniels*, 754 S.W.2d at 221).

But *Stolz* is plainly wrong. First, the second definition in *Queen* is not dictum, but rather part of a discussion leading up to its holding: "Keeping the foregoing principles in mind, we turn now to the specific allegations in the instant indictment." *Queen*, 662 S.W.2d at 341. Second, the two definitions in *Queen* are specifically only two examples: "While other possible forms of constructive transfer can be postulated . . . ." *Id.* at 340. Third, *Queen* involved two transfers, an actual transfer followed by a constructive transfer; it can hardly be maintained that "*Queen* envisioned only one transfer between the seller and the buyer." *Id.* at 341.

To the extent *Warren* and *Stolz* disavow the second definition in *Queen,* we reject their holdings. *Queen* is still the defining law regarding constructive transfer.

■ Turner said he haggled with Sims over the price, and they discussed the quantity inside the package. Considering this and the other evidence, and viewing the evidence in the light most favorable to the court's finding, a rational trier of fact could have found beyond a reasonable doubt based on circumstantial evidence that Sims placed the cocaine package at the location from where it was retrieved and that he knew what it contained. Based on those findings, the court could have concluded that Sims constructively transferred the cocaine to Turner. *Queen,* 662 S.W.2d at 340–41.

We overrule the legal-sufficiency challenge.

### Ineffective Assistance of Counsel

Sims claims his counsel was ineffective because, instead of moving for a judgment of acquittal because (as he asserts in his first issue) the evidence was legally insufficient to sustain his conviction, he called Sims to testify, which ultimately harmed Sims more than helped him. Our resolution of Sims's first issue resolves this issue. If, as we have determined, the evidence was legally sufficient to convict Sims of constructive transfer, then defense counsel could not have been deficient in not moving for a judgment of acquittal. And because Sims makes his complaint about being called to testify contingent on there being a viable motion for judgment of acquittal, neither can defense counsel have been deficient in calling Sims as a witness.

Nevertheless, we will address whether calling Sims to testify was by itself deficient conduct by counsel. Texas courts follow the United States Supreme Court's two-pronged *Strickland* test to determine whether counsel's representation was so inadequate as to be in violation of the Sixth Amendment right to effective assistance of counsel. *Thompson v. State,* 9 S.W.3d 808, 812 (Tex.Crim.App.1999) (citing *Hernandez v. State,* 726 S.W.2d 53, 55 (Tex.Crim.App.1986), which adopted the standard in *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984)). Appellant must show: (1) counsel's assistance fell below an objective standard of reasonableness, and (2) counsel's deficient assistance, if any, prejudiced the defendant. *Thompson,* 9 S.W.3d at 812 (citing *McFarland v. State,* 928 S.W.2d 482, 500 (Tex.Crim.App.1996)). There is a strong presumption that counsel's performance fell within the wide range of reasonable professional assistance. *Id.* at 813 (citing *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066).

■ Appellant must prove ineffective assistance by a preponderance of the evidence. *Id.* at 813 (citing *Cannon v. State,* 668 S.W.2d 401, 403 (Tex.Crim.App.1984)). Furthermore, there is a presumption that the challenged act by defense counsel is trial strategy. *Pena–Mota v. State,* 986 S.W.2d 341, 346 (Tex.App.-Waco 1999, no pet.) (citing *Jackson v. State,* 877 S.W.2d 768, 771 (Tex.Crim.App.1994)). This issue was not raised in Sims's motion for new trial, and he has not offered evidence regarding the matter of trial strategy, *e.g.,* did Sims not want to testify, or was there another and better defensive strategy defense counsel could have employed. Absent proof by Sims to the contrary, we presume defense counsel believed it necessary to call Sims as the only way to rebut Turner's testimony. *See Bone v. State,* 77 S.W.3d 828, 836 (Tex.Crim.App.2002). Accordingly, we overrule the issue of ineffective assistance of counsel.

*Conclusion*

Having overruled Sims's issues, we affirm the judgment.