In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00073-CV

                                                ______________________________

 

 

                                                 IN THE ESTATE OF

                                      DORIS V. FRAME, DECEASED

 

 

                                                                                                  


 

 

                                            On Appeal from the County Court at Law

                                                             Bowie County, Texas

                                                    Trial Court No. 10C0978-2CCL

 

                                                             
                                     

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                        Memorandum Opinion by Chief Justice Morriss








                                                     MEMORANDUM 
OPINION

 

            This
is an appeal by Noel Frame, acting pro se, from the order of transfer issued by
the Bowie County Court, transferring this contested probate proceeding to the
Bowie County Court at Law, on June 4, 2010.  


            As
a general rule, parties may appeal only from a final judgment.  De
Ayala v. Mackie, 193 S.W.3d 575, 578 (Tex. 2006).  But see
Tex. Civ. Prac. & Rem. Code Ann.
§ 51.014(a) (Vernon 2008) (listing interlocutory orders that are
appealable).  Probate proceedings give
rise to a recognized exception to that general rule since multiple judgments
may be rendered on discrete issues before the entire probate proceeding is
concluded.  See De Ayala, 193 S.W.3d at 578. 
But not all probate orders are appealable.  Id.
 Courts assessing “sufficient attributes
of finality to confer appellate jurisdiction” have looked to whether an order
resulted from the adjudication of a “substantial right” or whether it disposed
of “all issues in the phase of the proceeding for which it was brought.”  Id.  

            The Texas Supreme Court
has adopted the following standard to determine the finality of a probate court
order:

If there is an express statute, such as the one
for the complete heirship judgment, declaring the phase of the probate
proceedings to be final and appealable, that statute controls.  Otherwise, if there is a proceeding of which
the order in question may logically be considered a part, but one or more
pleadings also part of that proceeding raise issues or parties not disposed of,
then the probate order is interlocutory.

 

Crowson v. Wakeham, 897 S.W.2d 779, 783 (Tex. 1995).  Under this test, an order that merely “sets
the stage” for further resolution is interlocutory and not appealable.  De Ayala,
193 S.W.3d at 579; Fernandez v.
Bustamante, 305 S.W.3d 333, 338 (Tex. App.––Houston [14th Dist.] 2010, no
pet.).  There is no express statute that
declares a decision to grant or deny a transfer of a case to county court at
law to be final and appealable. 
Moreover, it has been determined that, under Crowson, a transfer order could never, by itself, be
appealable.  Forlano v. Joyner, 906 S.W.2d 118, 120 (Tex. App.––Houston [1st
Dist.] 1995, no writ).  

            The
proceeding with which the transfer order is logically related is the probate of
the Frame estate.  Because the entire
probate proceeding was transferred, and because the probate proceeding has
clearly not been finalized, the transfer order is interlocutory.  

            Accordingly,
we dismiss Frame’s appeal for want of jurisdiction.

 

                                                                        Josh
R. Morriss, III

                                                                        Chief
Justice

 

Date Submitted:          July
27, 2010

Date Decided:             July
28, 2010






5in;text-indent:-.5in'>(1)        The
Evidence Is Legally Insufficient that Clinton “Used” the Card, Within the
Meaning of the Statute

 

            A
person commits the offense of credit or debit card abuse when “with intent to
obtain a benefit fraudulently,” he or she “presents or uses a credit card or
debit card with knowledge that . . . the card, whether or not
expired, has not been issued to him and is not used with the effective consent
of the cardholder.”  Tex. Penal Code Ann. § 32.31(b) (Vernon
Supp. 2010).[1]  The indictment alleged Clinton

did
then and there with intent to fraudulently obtain a benefit, use a debit card, namely a First
National Bank debit card, with knowledge that the card had not been issued to
the said defendant, and with knowledge that said card was not used with the
effective consent of the cardholder, namely, S. Hubbard.

 

(Emphasis added.) 
While the State presented evidence that Clinton attempted to use the
debit card, the State did not present any evidence that Clinton actually
purchased anything with, or received any value from, the card.

            The first
question presented in our analysis is whether the State is bound by its allegations
in the indictment.  The State argues that
the hypothetically correct jury charge would not be affected by its allegations
in the indictment.  The Texas Court of
Criminal Appeals has held that evidentiary sufficiency should be measured
against a “hypothetically correct” jury charge. 
See Gollihar v. State, 46
S.W.3d 243, 253 (Tex. Crim. App. 2001); Malik
v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).  Malik
controls “even in the absence of alleged jury charge error.”  Gollihar, 46 S.W.3d at 255.

            A “hypothetically
correct” jury charge is “one that accurately sets out the law, is authorized by
the indictment, does not unnecessarily increase the State’s burden of proof or
unnecessarily restrict the State’s theories of liability, and adequately describes
the particular offense for which the defendant was tried.”  Malik,
953 S.W.2d at 240.  The “hypothetically
correct” jury charge cannot completely rewrite the indictment, but such a
charge need not “track exactly all of the allegations in the indictment.”  Gollihar, 46 S.W.3d at 253.  If the essential elements of the offense are
modified by the indictment, the modification must be included.  Id.
at 254.  The hypothetically correct
charge, however, “need not incorporate allegations that give rise to immaterial
variances.”  Id. at 256.

            The “‘law’
as ‘authorized by the indictment’ must be the statutory elements” of the
offense charged “as modified by the charging instrument.”  Curry
v. State, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000).[2]
 The hypothetically correct jury charge
must include both (1) allegations that form an integral part of an essential
element of the offense, including allegations that are statutorily alternative
manner and means and (2) material variances. 
Mantooth v. State, 269 S.W.3d
68, 74 (Tex. App.—Texarkana 2008, no pet.) (number of statute creating duty to
register was not integral part of essential element); see Gollihar, 46 S.W.3d
at 256.

            Of the
various ways to commit credit or debit card abuse, Section 32.31(b) of the Texas
Penal Code provides as follows, in pertinent part:

            (b) A
person commits an offense if:

(1) 
with intent to obtain a benefit fraudulently, he presents or uses a
credit card or debit card with knowledge that:

(A) 
the card, whether or not expired, has not been issued to him and is not
used with the effective consent of the cardholder . . . .

 

Tex. Penal Code Ann.
§ 32.31(b).

 

            The first
step in our analysis is to determine whether the phrase “presents or uses” sets
out integral parts of an essential element of the crime, a statutory
alternative manner and means of committing it, or mere extraneous statutory
language.  The Texas Court of Criminal
Appeals has set out how to identify the essential elements of an offense and
the alternate modes of commission, if any, by parsing the statutory text into
the various parts of speech according to the rules of grammar.  Pizzo
v. State, 235 S.W.3d 711, 714 (Tex. Crim. App. 2007) (determining whether jury unanimity was required).

The essential elements of an offense are, at a minimum:  (1) “the subject (the defendant);” (2) “the
main verb;” (3) “the direct object if the main verb requires a direct object
(i.e., the offense is a result-oriented crime);” “the specific occasion[;]” and
the requisite mental state. The means of commission or nonessential unanimity
elements are generally set out in “adverbial phrases” that describe how the
offense was committed.  Such phrases are
commonly preceded “by the preposition ‘by[.]’” 

 

Id. at 714–15.

 

            Our Pizzo-directed analysis reveals that the
subject of subsection (b)(1) of the statute is the pronoun “he” referring to “a
person,” male or female.  The words “presents
or uses” are the main verbs, and “card” is the direct object.  The phrase “with knowledge . . . that the
card, whether or not expired, has not been issued to him and is not used with
the effective consent of the cardholder,” dictates the requisite mental
state.  Thus, the words “presents or
uses,” as the main verbs, are integral parts of an essential element of the
offense.[3]  The Texas Court of Criminal Appeals has
instructed that any modification in an integral part of an essential element of
the offense must be included in the hypothetically correct jury charge.  Gollihar, 46 S.W.3d at 254.  Thus, here, the State is bound by, and must
have proven, its focused allegation that Clinton “used” the credit or debit
card.[4]

            The next
question in our analysis is the meaning of the word “use.”  The State argues the word “use” includes the
conduct at issue.  The State urges this Court
to adopt a definition that “any employment of the card” qualifies as “use.”  The State analogizes to the deadly weapon
statute, which has been interpreted to include “exhibit” within the definition
of “use.”  Although the deadly-weapon
statute provides “used or exhibited,”[5]
the Texas Court of Criminal Appeals has construed the term “use” to mean “any
employment of a deadly weapon, even its simple possession, if such possession
facilitates the associated felony.”  Patterson v. State, 769 S.W.2d 938, 940
(Tex. Crim. App. 1989).  The court noted
this interpretation included exhibiting and stated “one can ‘use’ a deadly
weapon without exhibiting it, but it is doubtful one can exhibit a deadly
weapon during the commission of a felony without using it.”  Id.  Patterson,
however, did not concern a case where only one of the two terms was employed in
the State’s deadly-weapon allegation.  Id. 
As such, those words from Patterson
are only dicta, not binding precedent applicable here.  Further, deadly weapon allegations are not
subject to the same pleading requirements as integral parts of an essential
element of an offense.  A deadly-weapon allegation
need not be presented in an indictment; “[a] defendant is simply entitled to
written notice in some form that the use of a deadly weapon will be a fact
issue at trial.”  Ex parte Minott, 972 S.W.2d 760, 761 (Tex. Crim. App. 1998) (concluding
notice of deadly weapon allegation can be waived by pleading guilty).

            The presence
of both “presents” and “uses” in the statute applicable here, however, suggests
that the definitions of the two words are intended to be mutually
exclusive.  If “uses” is interpreted
broadly enough to cover what Clinton has been proven to have committed, the
Texas Legislature would have had no purpose for including in the statute the
word “presents” in addition to the word “uses.”   Neither “use” nor “present” are common
synonyms for each other.  Merriam-Webster’s Collegiate Thesaurus
573–74, 825 (1988).  “Present,” used as a
verb, has numerous definitions, including “to hand over or submit, as a bill or
check, for payment.”  Random House Webster’s Unabridged Dictionary
1529 (2d ed. 2001).  “Use” also has
numerous definitions.  Id. at 2097.  While “use” can certainly be understood so
broadly that it could include the conduct defined as “present,” adopting a
definition of “use” that includes all the conduct which qualifies as “present”
would render the statutory word “present” meaningless.  As a general rule of statutory construction,
we should avoid statutory constructions that would render any parts of the
statute meaningless.  Tex. Gov’t Code Ann. § 311.021(2)
(Vernon 2005) (each word in statute intended to be effective); Ludwig v. State, 931 S.W.2d 239, 242
(Tex. Crim. App. 1996).  In order to
prevent the term “present” from being rendered meaningless, we conclude that “present”
under Section 32.31 means to tender the debit or credit card, and “use” means
to employ the card in any other manner including, but not limited to,
successfully completing a transaction. 
Because the allegation at issue in this case is an integral part of an
essential element, the State is bound by its allegation in the indictment.[6]  The State was obligated to prove that Clinton
used the debit card.

            Although the
State presented evidence that the card had been used to purchase $33.36 worth
of gasoline,[7] no evidence
linked Clinton to that transaction.  All
other evidence showed only that Clinton presented the card.

            Harmon Greer
and John Finney, police officers with the Gilmer Police Department, both
testified they had reviewed Wal-Mart’s security video recording that showed
Clinton attempting to make a purchase with the debit card.  The security video recording from Wal-Mart
was not introduced into evidence.  Both
Greer and Finney testified the debit card was declined at Wal-Mart.  In a recorded statement introduced into
evidence, Clinton admits to attempting to use the debit card to purchase
cigarettes first at Wil-Max and then at Wal-Mart.  Clinton states that—because her boyfriend’s
nephew was too young to purchase cigarettes, yet had his parents’ permission to
smoke cigarettes—she had agreed to purchase cigarettes for the nephew and a
friend of his.  Clinton claimed that she
thought the card belonged to the nephew’s friend and that she thought something
was wrong only after the card was declined at Wal-Mart.  After the card was declined at Wal-Mart,
Clinton admits that the nephew and his friend attempted to use the debit card
at an ATM to get cash for Clinton to purchase cigarettes[8]
and attempted to purchase gasoline at Brookshire Brothers to fill up the tank
of Clinton’s vehicle.  Clinton, though,
states the debit card was declined at Wil-Max, Wal-Mart, the ATM, and
Brookshire Brothers.  Thus, the record
fails to establish Clinton employed the debit card in any manner other than
tendering it as payment.

            Alternatively,
in case we interpret “uses” to exclude “presents,” the State argues that
Clinton “used” the debit card by swiping it at the Wal-Mart checkout.  Clinton admitted she swiped the card in a
card reader provided for customers by Wal-Mart at a checkout station.  We are not persuaded, however, that the State’s
argument adds any meaningful difference to the discussion.  This Court takes judicial notice that, in
many stores, a credit or debit card is now ordinarily tendered by swiping
it—the modern equivalent of handing over a card to a clerk or otherwise
submitting it for payment.  Thus, in our
view, Clinton’s act in swiping the card qualifies only as presenting the
card—since there is no evidence that her act of swiping the card resulted in a
purchase or in value being obtained from the card.

            Although
the State presented evidence that Clinton was guilty of an act that could have
qualified as credit or debit card abuse—i.e., presenting the debit card—the
State failed to prove the act alleged in the indictment—i.e., using the debit
card.  Because there is no evidence that
Clinton used the debit card, either as a principal or a party, the evidence is
legally insufficient to sustain the conviction.

(2)        Clinton Requested a
Lesser-Included-Offense Instruction on Attempted Credit or Debit Card Abuse

 

            The next
question is whether we should modify the judgment to reflect a conviction for
the lesser-included offense of attempted credit card abuse.  See
Tex. Penal Code Ann. § 15.01
(Vernon 2003), § 32.31.  Clinton’s trial
counsel requested an instruction on attempted credit card abuse, but it was
denied by the trial court.[9]  Attempted credit or debit card abuse requires
evidence that Clinton had the intent to commit credit or debit card abuse and
did an act amounting to more than mere preparation that tended, but failed, to
effect the actual commission of the offense intended.  See Tex. Penal Code Ann. §§ 15.01, 32.31.

[A]
court of appeals may reform a judgment of conviction to reflect conviction of a
lesser included offense only if (1) the court finds that the evidence is
insufficient to support conviction of the charged offense but sufficient to
support conviction of the lesser included offense and (2) either the jury was
instructed on the lesser included offense (at the request of a party or by the
trial court sua sponte) or one of the parties asked for but was denied such an
instruction.

 

Haynes v. State,
273 S.W.3d 183, 185 (Tex. Crim. App. 2008); Logan
v. State, 48 S.W.3d 296, 307 (Tex. App.—Texarkana 2001), aff’d, 89 S.W.3d 619, 630 (Tex. Crim. App. 2002); cf. Collier v. State, 999 S.W.2d 779, 782 (Tex. Crim. App. 1999)
(plurality op.).  Clinton requested an instruction
on attempted credit card abuse that was denied by the trial court, and the
evidence is sufficient to support a conviction for attempted credit or debit
card abuse.  Therefore, we modify the
judgment to reflect conviction for attempted credit card abuse.

            For the
reasons stated, we reverse Clinton’s conviction, modify the judgment to reflect
a conviction for attempted credit or debit card abuse, and remand this case for
a new sentencing proceeding.

 

 

                                                                                    Josh
R. Morriss, III

                                                                                    Chief Justice

 

Date Submitted:          November
3, 2010

Date Decided:             November
17, 2010

 

Publish











[1]Section
32.31 has been amended since the alleged commission of the offense in this
case, but none of the amendments are relevant to this appeal.





[2]Presiding
Judge Keller has summarized Curry as
holding, “[w]hen a statute lists more than one method of committing an offense,
and the indictment alleges some, but not all, of the statutorily listed methods,
the State is limited to the methods alleged.”  Fuller
v. State, 73 S.W.3d 250, 255 (Tex. Crim. App. 2002) (Keller, P.J., concurring).





[3]The
Texas Court of Criminal Appeals cautioned that “[n]ot every list of
alternatives in a statute will constitute a ‘manner or means’ of committing the
offense.”  Curry, 30 S.W.3d at 398.





[4]The
State cites Adger v. State, where the
First District Court of Appeals found the evidence sufficient when the State
only alleged use and the evidence established the card was refused.  7 S.W.3d 899, 902 (Tex. App.—Houston [1st
Dist.] 1999, no pet.).  Adger, though, does not define the
words, does not reference or cite the hypothetically correct jury charge, and
states the issue argued was “the evidence was legally insufficient to prove he
presented or used the credit card.”  Id. 
We do not find Adger
persuasive, because it does not address the question raised in this case—the
allegation of only “uses.”

 





[5]Tex. Code Crim. Proc. Ann. art. 42.12, §
3g(a)(2) (Vernon Supp. 2010); see Tex. Penal Code Ann. § 1.07(a)(17) (Vernon
Supp. 2010).





[6]The
State may allege alternative theories in the conjunctive.  See
Swearingen v. State, 101 S.W.3d 89,
103 (Tex. Crim. App. 2003).   The State
is bound, however, by its modifications to essential elements and statutory
alternative manner and means.

 





[7]Officer
John Finney testified the card had been used to purchase $33.36 of gasoline at
Brookshire Brothers.  There is no
evidence that Clinton was involved in this transaction, either as a principal
or a party.  Although Clinton admits in
her interview to being a possible party to an unsuccessful attempt to purchase
gasoline at Brookshire Brothers after attempting to use the card at Wal-Mart,
she denied that her attempted purchase had been successful.  In Clinton’s interview, Clinton states she
knew the card had previously been used to purchase gasoline.  In the interview, Finney states the
successful attempt to purchase gasoline occurred before Clinton’s visit to
Wal-Mart.  





[8]Finney
testified that there had been an unsuccessful attempt to use the debit card at
an ATM. 





[9]In
discussing the matter during the charge conference, the trial court correctly
noted that Section 32.31 of the Texas Penal Code does not require that a
benefit actually be obtained.  The State,
though, alleged only “use” and is bound by that allegation.